STATE EX REL. LA FOLLETTE, Attorney General, Petitioner, v. RASKIN, Circuit Judge, Respondent.

*January 12—February 1, 1966.*

42

For the petitioner the cause was argued by *William A. Platz*, assistant attorney general, and *Robert E. Sutton*, assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette*, attorney general, and *Hugh R. O'Connell*, district attorney.

For the respondent there was a brief by *Zubrensky, Padden, Graf & Bratt* of Milwaukee, and oral argument by *Herbert S. Bratt*.

WILKIE, J. This original action concerns the effect of *White* on criminal actions which have not been finalized but have proceeded at least to the point of arraignment. The precise issue is whether the circuit court erred in granting an alleged criminal defendant's motion to dismiss the proceedings against him for the reason that the arrest warrant was constitutionally defective under *White* when the motion was made for the first time only after the defendant had been arraigned, entered a plea, and had a jury trial which resulted in a mistrial.

In *White* an expectant mother signed a complaint declaring that "she is pregnant with a child, which, when born is likely to be born out of wedlock" and "that the defendant . . . is the father of said child." A warrant for the defendant's arrest was then executed by the deputy clerk of the county court on the basis of an "Authorization for Paternity Action" issued by an assistant corporation counsel. The defendant was brought before the court and a guardian *ad litem* was appointed to act in his behalf. The guardian *ad litem* then made a special appearance and objected to the jurisdiction of the court on the grounds that the complaint stated insuffi-

cient facts to show probable cause and that the corporation counsel did not have the requisite disinterest and neutrality to issue a warrant. The trial court denied the motion to dismiss.

On appeal this court, in regard to the first prong of the attack, held that the recitation by the unwed mother of facts within her personal knowledge provided a sufficient basis for a finding of probable cause. As a caveat, the court added:

"This would not be true, however, if the complaint were made upon information and belief or if the complaint purported to assert a crime which required a specific intent.

"As noted above . . . [citing *Giordenello v. United States* (1958), 357 U. S. 480, 486, 78 Sup. Ct. 1245, 2 L. Ed. (2d) 1503], the court observed that a magistrate should not accept the 'mere conclusion' of a complainant that a crime has been committed by the person whose arrest is sought." [2]

On the second point this court determined that a district attorney (or a corporation counsel) is not "the equivalent of a neutral and detached magistrate who may constitutionally be empowered to authorize the issuance of the warrant." [3]

The respondent judge contends that the entertainment of Pipito's motion for dismissal was proper under the discretion conferred by sec. 955.09 (3), Stats.[4] But the state does not object to the consideration of the motion as such; rather the state is simply urging that the actual granting of the motion constituted error. It should be noted that although the warrant in the present case was executed and issued by a deputy court clerk and not by a district attorney (or corporation counsel), the state con-

---

[2] *State ex rel. White v. Simpson, supra,* footnote 1, at page 596.

[3] *State ex rel. White v. Simpson, supra,* footnote 1, at page 597.

[4] "955.09 (3) Defenses and objections based on defects in the institution of the proceedings, . . . must be raised before trial by motion or be deemed waived. . . ."

cedes that both the warrant and the complaint were defective under the *White* holding and caveat. And despite the grant of leave to issue a new complaint and warrant under sec. 955.09 (6),[5] the state, ostensibly fearing the possible impact of the trial court's decision on the administration of criminal justice in Wisconsin, chose to commence this action instead.

In order to try a person for the commission of a crime, the trial court must have jurisdiction of both the subject matter and the person of the defendant.[6] Although jurisdiction of subject matter is derived from law and cannot be waived nor conferred by consent, this is not true of jurisdiction over the person.[7] Several Wisconsin cases have held that by entering a plea of not guilty at his arraignment, a defendant has submitted to the jurisdiction of the circuit court over his person. In *Kushman v. State ex rel. Panzer* [8] this court, in response to the defendant's post-conviction attack (by *habeas corpus*) on his conviction on the theory that the complaint stated no offense, denied *habeas corpus* and stated:

"Defendant entered a plea of not guilty, demanded a jury trial, and the trial proceeded without any challenge as to the sufficiency of the complaint. If it was insufficient for any reason it should have been challenged before proceeding with the trial. . . [Citing the forerunner of sec. 955.09, Stats.]" [9]

Similarly, in *State ex rel. Wojtycski v. Hanley* [10] it was held:

---

[5] "955.09 (6) If the court grants a motion to dismiss based on a defect in the indictment, information or complaint, or in the institution of the proceedings, it may order that the defendant be held in custody or that his bail be continued for a specified time pending issuance of a new summons or warrant or filing of a new indictment, information or complaint."

[6] 21 Am. Jur. (2d), Criminal Law, p. 400, sec. 378.

[7] 21 Am. Jur. (2d), Criminal Law, p. 400, sec. 379.

[8] (1942), 240 Wis. 134, 2 N. W. (2d) 862.

[9] Id. at page 139.

[10] (1945), 248 Wis. 108, 20 N. W. (2d) 719.

"In entering his plea in abatement [comparable to a motion to dismiss under the present sec. 955.09, Stats.], relator acknowledged and submitted to the jurisdiction of the municipal court." [11]

And

"At the time the writ was filed in the instant case, relator had appeared in the municipal court and entered a plea of abatement, and upon the overruling thereof, a plea of not guilty. Jurisdiction to try an offender for a crime of which the court has jurisdiction is obtained by his appearance in court, and by pleading guilty or not guilty, jurisdiction of his person is conferred on the court." [12]

Where a person has been forcibly abducted and taken from one state to another to be tried for a crime the jurisdiction of the court to try that person is not impaired. [13] This holding rests "on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." [14] Similarly, when an accused has (1) been bound over by the magistrate after a hearing, (2) been arraigned by the circuit court, and (3) received one jury trial, he has been sufficiently "apprized of the charges against him" and has been prosecuted, insofar as the case against him has proceeded, "in accordance with constitutional procedural safeguards."

*White* guarantees that no citizen shall be subject to an arrest by warrant except where the warrant is issued on probable cause and is authorized by a neutral and detached magistrate. Consequently, under the rule of *Kushman* and *Hanley,* and also because *White* is satisfied when

[11] Id. at page 112.

[12] Id. at page 113.

[13] *Frisbie v. Collins* (1952), 342 U. S. 519, 522, 72 Sup. Ct. 509, 96 L. Ed. 541.

[14] Ibid.

probable cause has been found by a qualified magistrate (or the defendant is bound over to circuit court on his own waiver of the preliminary examination), a defendant who has appeared in court with counsel without contesting the validity of the arrest, has submitted to the jurisdiction of the court and has waived his right to attack the arrest warrant.

Although what has been said so far in this opinion necessarily pertains only to the facts before us, we feel obliged [15] to comment on the effect of *White* in three other situations.

First, a motion to the circuit court on *White* grounds after the bindover but before the arraignment would appear to be timely if made before or contemporaneously with a motion to dismiss on the ground that the evidence adduced at the preliminary is insufficient to support a bindover.

By the time the preliminary examination has been completed (or waived) and there has been a bindover, probable cause has been found by an independent and neutral magistrate that the defendant has committed a crime. The reason a defendant should be permitted to raise the invalidity of his arrest under *White* when he appears in the trial court and prior to actual arraignment and entry of a plea, is to enforce the purpose of the *White* rule which is to assure that arrest warrants will be issued only on probable cause as determined by a neutral magistrate. If the state, at the first appearance (as distinguished from arraignment) following the bindover, could gain the dismissal of the motion attacking the validity of the arrest (on the grounds of *White*) by pointing to the results of the preliminary, the beneficial effect of the *White* ruling on prosecution practices would be almost completely negated. On the other hand it is perfectly consistent with our reason for holding that it comes too late

---

[15] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 259, 133 N. W. (2d) 753.

for a defendant to contest the validity of his arrest (on *White* grounds) after he has submitted to the jurisdiction of the court by being arraigned and having pleaded, to require defendant, to be timely, to move for such dismissal at the earliest opportunity that he appears in the trial court. By moving to dismiss because of lack of evidence, the defendant has himself invoked the jurisdiction of the court and should be required to make his motion to dismiss (on *White* grounds) either before or at such time.

Second, cases that have been finalized, *i.e.*, there has been a judgment of conviction, sentence and exhaustion of rights of appeal. Included in this category are cases where the defendant has either pleaded guilty or not guilty and has been convicted without raising and preserving an objection to the validity of the arrest on the grounds decided in *White*.

In *Hawkins v. State* [16] we held:

"It appears to be the general rule, that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea."

In the more recent case of *Carter v. State* [17] on rehearing we stated:

"While we are not convinced that the arrest was invalid, any invalidity of the original arrest has been rendered entirely immaterial by defendant's pleading guilty to the information without raising any issue with respect to the validity of the arrest. [Citing *Bartozek v. State* (1925), 186 Wis. 644, 203 N. W. 374, and *Hawkins v. State* (1965), 26 Wis. (2d) 443, 132 N. W. (2d) 545.]" [18]

[16] (1965), 26 Wis. (2d) 443, 448, 132 N. W. (2d) 545. The reference to "nonjurisdictional defects" meant only subject matter jurisdiction.

[17] (1965), 27 Wis. (2d) 451, 134 N. W. (2d) 444, 136 N. W. (2d) 561.

[18] Id. at page 455b.

Thus, as to any conviction that has been finalized following a plea of guilty without preserving an objection to the validity of the arrest no question may be later raised in collateral proceedings as to the invalidity of the arrest on that ground.[19]

Similarly, as to any conviction that has been finalized following a plea of not guilty without preserving an objection to the validity of the arrest, no question may be raised as to the invalidity of the arrest on that ground in collateral proceedings.[20]

Third, as to those cases that have been finalized but where objection to the validity of the arrest was timely made and preserved on the grounds decided by *White*, the question of the retroactivity of the rule in *White* is raised. There are no doubt hundreds of convicted defendants now incarcerated in Wisconsin prisons who were arrested on warrants that did not meet the tests now set forth in *White*. Perhaps some of them were convicted after unsuccessfully attacking the validity of their arrests on precisely the same grounds decided in *White*. What of these defendants? Are they to be given the benefits of the *White* ruling?

It is now well established that the guaranties of the Fourth amendment of the United States constitution are binding against the states through the due-process clause of the Fourteenth amendment.[21] Since *White* concerns

---

[19] We decided to this effect in denying the issuance of a writ of *habeas corpus* on November 15, 1965, in unreported opinion No. 65/27, *State ex rel. Gonzales v. Burke.*

[20] We so held in denying the issuance of a writ of *habeas corpus* on October 14, 1965, in unreported opinion No. 65/21, *Horton v. Burke.* See also *State ex rel. Schwanke v. Utecht* (1951), 233 Minn. 434, 47 N. W. (2d) 99; *State ex rel. Farrington v. Rigg* (1961), 259 Minn. 483, 107 N. W. (2d) 841; *Hobson v. Crouse* (10th Cir. 1964), 332 Fed. (2d) 561; *United States v. Ragen* (7th Cir. 1957), 246 Fed. (2d) 264; and Anno. 96 A. L. R. 982.

[21] *State ex rel. White v. Simpson, supra,* footnote 1, and cases cited therein at page 594.

itself with the guaranties of the Fourth amendment we therefore turn to decisions of the United States supreme court to ascertain whether or not the rule in *White* is to be given retrospective application. Since we are here concerned with guaranties under the federal constitution we are bound by the decisions thereon by the United States supreme court.

None of the series of cases in which the United States supreme court "has made it unmistakably clear that warrants for search or for arrest must meet certain minimum standards under the Fourth Amendment to the United States constitution" [22] have concerned themselves with whether or not the holdings as to the constitutional rights therein considered should be applied retroactively.[23]

The guidelines for determining whether a decision concerning rules of federal constitutional law should be given retrospective application were recently set forth by the United States supreme court in *Linkletter v. Walker*.[24] The court said:

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [25]

In reaching its conclusion that the ruling in *Mapp v. Ohio* [26] (that evidence received as a result of an illegal

[22] *State ex rel. White v. Simpson, supra,* footnote 1, at page 593.

[23] See cases cited in *State ex rel. White v. Simpson, supra,* footnote 1, at pages 593, 594.

[24] (1965), 381 U. S. 618, 85 Sup. Ct. 1731, 14 L. Ed. (2d) 601. For analysis of this decision and the question of retrospective application of decisions of the United States supreme court on federal constitutional law, see Mishkin, The Supreme Court—Foreword, 79 Harvard Law Review (1965), 56.

[25] *Linkletter v. Walker, supra,* footnote 24, at page 629.

[26] (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081.

search or seizure was to be excluded in state as well as federal criminal trials) was not to be given retrospective application, the court stated:

"*Mapp* had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within its rights. This, it was found, was the only effective deterrent to lawless police action. Indeed, all of the cases since *Wolf* [*Wolf v. Colorado* (1949), 338 U. S. 25, 69 Sup. Ct. 1359, 93 L. Ed. 1782, holding that the exclusionary rule did not affect state proceedings] requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. See, *e. g., Rea v. United States, supra* [(1956), 350 U. S. 214, 76 Sup. Ct. 292, 100 L. Ed. 233]. We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to *Mapp* has already occurred and will not be corrected by releasing the prisoners involved. Nor would it add harmony to the delicate state-federal relationship of which we have spoken as part and parcel of the purpose of *Mapp*. Finally, the ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late." [27]

In *Linkletter* the court identified three areas in which rules have been applied retrospectively by the United States supreme court:

"In *Griffin v. Illinois*, . . . [(1956), 351 U. S. 12, 76 Sup. Ct. 585, 100 L. Ed. 891] the appeal which was denied because of lack of funds was 'an integral part of the [State's] trial system for finally adjudicating the guilt or innocence of a defendant.' At 18. Precluding an appeal because of inability to pay was analogized to denying the poor a fair trial. In *Gideon v. Wainwright*, . . . [(1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799] we recognized a fundamental fact that a layman, no matter how intelligent, could not possibly further his claims of innocence, and violation of previously declared rights adequately. Because of this the judgment lacked reliability. In *Jackson v. Denno*, . . . [(1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908] the holding

[27] *Linkletter v. Walker, supra*, footnote 24, at page 636.

went to the basis of fair hearing and trial because the procedural apparatus never assured the defendant a fair determination of voluntariness. In addition, Mr. Justice WHITE expressed grave doubts regarding the ability of the jury to disregard a confession found to be involuntary if the question of guilt was uncertain." [28]

The court said that in each of these three areas "the principle that we applied went to the fairness of the trial—the very integrity of the fact-finding process." [29] The court then concluded as to the ruling of *Mapp* "Here, as we have pointed out, the fairness of the trial is not under attack. All that petitioner attacks is the admissibility of evidence, the reliability and relevancy of which is not questioned, and which may well have had no effect on the outcome." [30]

In analyzing the effect of the *Mapp* rule on the administration of justice the court said:

"In rejecting the *Wolf* doctrine as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment. That purpose will not at this late date be served by the wholesale release of the guilty victims.

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of *Mapp* retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." [31]

---

[28] *Linkletter v. Walker, supra,* footnote 24, at page 639, footnote 20. See also pages 638, 639.

[29] *Linkletter v. Walker, supra,* footnote 24, at page 639.

[30] Ibid.

[31] *Linkletter v. Walker, supra,* footnote 24, at page 637.

In the very recent case of *Tehan v. United States*,[32] the court rejected retrospective application of the rule of *Griffin v. California*,[33] which held that adverse comment by a prosecutor or trial judge upon a defendant's failure to testify in a state criminal trial violates the federal privilege against compulsory self-incrimination. The rule of *Griffin* has long been the law in Wisconsin.[34] Considering the rule in the light of the guidelines set forth in *Linkletter*, the court observed:

"It follows that the 'purpose' of the *Griffin* rule is to be found in the whole complex of values that the privilege against self-incrimination itself represents, values described in the *Malloy* case [*Malloy v. Hogan* (1964), 378 U. S. 1, 84 Sup. Ct. 1489, 12 L. Ed. (2d) 653] as reflecting 'recognition that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth.' 378 U. S., at 7–8." [35]

The court stated that:

". . . the basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load.' " [36]

In further considering the purpose of the *Griffin* rule the court stated:

[32] (1966), 382 U. S. 406, 86 Sup. Ct. 459, 15 L. Ed. (2d) 453.
[33] (1965), 380 U. S. 609, 85 Sup. Ct. 1229, 14 L. Ed. (2d) 106.
[34] See sec. 325.13 (2), Stats.; *State v. Jackson* (1935), 219 Wis. 13, 261 N. W. 732; *Werner v. State* (1926), 189 Wis. 26, 206 N. W. 898; *Martin v. State* (1891), 79 Wis. 165, 48 N. W. 119.
[35] *Tehan v. United States, supra*, footnote 32, at page 414.
[36] *Tehan v. United States, supra*, footnote 32, at page 415.

". . . insofar as strict application of the federal privilege against self-incrimination reflects the Constitution's concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life," ' any impingement upon those values resulting from a State's application of a variant from the federal standard cannot now be remedied." [37]

In distinguishing the recent cases in which the court has applied constitutional decisions retroactively the court stated:

"As in *Mapp,* therefore, we deal here with a doctrine which rests on considerations of quite a different order from those underlying other recent constitutional decisions which have been applied retroactively. The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. See *Gideon v. Wainwright,* 372 U. S. 335; *Doughty v. Maxwell,* 376 U. S. 202; *Griffin v. Illinois,* 351 U. S. 12; *Eskridge v. Washington Prison Board,* 357 U. S. 214. The same can surely be said of the wrongful use of a coerced confession. See *Jackson v. Denno,* 378 U. S. 368; *McNerlin v. Denno,* 378 U. S. 575; *Reck v. Pate,* 367 U. S. 433. By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect." [38]

With respect to the rule in *White,* the basic purpose of the rule is to improve police practices and to assure that arrests will be made on a proper showing of probable cause as determined by an independent and impartial

[37] *Tehan v. United States, supra,* footnote 32, at page 416.
[38] *Tehan v. United States, supra,* footnote 32, at page 416.

magistrate. This purpose is not served by applying the rule of *White* to cases that have been finalized, even though the defendant has preserved his attack on the validity of the arrest. In each such case the defendant has been arrested, brought before a magistrate, bound over after a finding of probable cause by an impartial magistrate (or waiver) arraigned, tried, convicted, and sentenced. The rule requiring probable cause as determined by an independent magistrate before arrest is aimed not so much at the protection of the innocent or at the preservation of the reliability of the prosecution as against the defendant, but primarily at the requirement of giving a defendant a fair trial.

If defendants, who have been convicted in trials where the prosecutor has commented adversely at his trial upon defendant's failure to testify, have received a fair trial and are barred from obtaining the retroactive application of the ruling in *Griffin, a fortiori,* defendants, who have been convicted (and whose convictions are finalized) after they have been fairly apprized of the charges against them and after a trial conducted with adherence to all constitutional procedural safeguards, should not be able, on the basis of *White,* to challenge the validity of their original arrest. Neither the basic purpose of the *White* rule nor the sound administration of justice would be served by allowing these defendants to attack their convictions on the basis of a retroactive application of *White.*

*By the Court.*—Issuance granted of writ of mandamus to compel Circuit Judge MAX RASKIN of Branch No. 2 of the circuit court for Milwaukee county to proceed with trial in the case of State of Wisconsin v. Anthony Pipito.