LAMPKINS (Melvatean), Plaintiff in error, v. STATE, Defendant in error. [Case No. 49.] *

LAMPKINS (James Lee), Plaintiff in error, v. STATE, Defendant in error. [Case No. 120.]

*Nos. State 49, 120. Argued May 7, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 164.)

* Motion for rehearing denied, without costs, on September 8, 1971.

566

For the plaintiff in error Melvatean Lampkins there was a brief and oral argument by *Thomas P. Maroney*, attorney, and *Anthony W. Schiro* of counsel, both of Milwaukee.

For the plaintiff in error James Lee Lampkins there was a brief and oral argument by *Gerald P. Boyle* of Milwaukee.

For the defendant in error the cause was argued by *Lee Edward Wells*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*, attorney general, and *E. Michael McCann*, district attorney.

HANLEY, J. Numerous issues are presented on this review. We will first consider the issues that are common to both cases and then consider the issues raised by each defendant.

1. *Should the charges against the defendants be dismissed for lack of probable cause at the time of arrest?*

Defendants contend that their arrests were illegal for lack of probable cause. Such arrests, they argue, amount to a denial of due process and warrant the dismissal of the charges brought against them.

We think the defendants' contentions are not properly raised. The defendants attacked the validity of their arrests for the first time on motions after verdict. Defenses and objections based on defects in the institution of proceedings must be raised before trial by motion or be deemed waived.[1] Failure of probable cause to arrest goes to the question of jurisdiction over the person.[2] ". . . Jurisdiction does not depend upon the warrant but upon the accused's physical presence before the magistrate. . . ."[3]

". . . [A] defendant who has appeared in court with counsel without contesting the validity of the arrest,

---

[1] Sec. 955.09 (3), Stats. 1967, provides: "Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. But the court may, in its discretion, entertain such motion at a later stage of the trial, in which case the defendant waives any jeopardy that may have attached. A motion to suppress evidence shall be so entertained, with waiver of jeopardy, when it appears that defendant is surprised by the state's possession of such evidence."

[2] *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 45, 139 N. W. 2d 667.

[3] *Pillsbury v. State* (1966), 31 Wis. 2d 87, 92, 142 N. W. 2d 187.

has submitted to the jurisdiction of the court and has waived his right to attack the arrest warrant." [4]

Because the alleged defect in both instances is the lack of probable cause, the analysis is the same whether the arrest is made with or without a warrant. The due process of law which defendants contend is denied by the alleged lack of probable cause is not impaired in the absence of a timely objection. ". . . [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. . . ." [5] Here the defendants were present in court, failed to object to the court's jurisdiction, pleaded to the charges and received a fair trial.

Whether or not the record reflects evidence of probable cause to arrest becomes immaterial in the absence of a timely objection challenging the arrest. We conclude the objections to the arrest are not properly raised, and defendants' contentions on the issue of lack of probable cause are without merit.

> 2. *Did the trial court abuse its discretion in denying the defendants' separate jury trials?*

The defendants requested separate trials. Melvatean Lampkins gave no reasons for her request. James Lampkins moved for a separate trial because he believed that he could not get a "fair trial." His attorney explained to the court that such motion was "against my better judgment." The motions were denied.

---

[4] *State ex rel. La Follette v. Raskin, supra,* at page 47.

[5] *Frisbie v. Collins* (1952), 342 U. S. 519, 522, 72 Sup. Ct. 509, 96 L. Ed. 541, cited in *State ex rel. La Follette v. Raskin, supra,* at page 46.

The general rule on consolidation of criminal cases is found in *State v. Doyle* (1968), 40 Wis. 2d 461, 469, 162 N. W. 2d 60:

" '. . . A trial court has power to try cases together when the defendants are charged with the same offenses arising out of the same transaction and provable by the same evidence. . . .' "

A motion for severance is addressed to the discretion of the trial court. *State v. Doyle, supra,* at page 469. Consolidation is a procedural mechanism which avoids repetitious litigation and facilitates the speedy administration of justice. *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

There are, of course, circumstances where a joint trial would be unduly prejudicial to the interests of either or both of the defendants; and in that case the interests of administrative efficiency must yield to the mandates of due process. Such circumstances are found where the defendants intend to advance conflicting or antagonistic defenses. *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723. That is not a possible ground in this case since the defendants did not testify.

In view of the above standards, and the failure of the defendants to particularize their grounds for separate trials, the instant case did not require separate trials. The crimes with which the defendants were charged arose out of the same transaction and were provable by the same evidence. No confessions or statements by the defendants were admitted or even offered in evidence. Their theories of defense were not contradictory.

### 3. *Was error committed in the giving of instructions?*

The defendants object to the form and content of instructions. The objections are not timely and must be deemed waived.

At the close of the trial, the judge discussed the proposed jury instructions with the respective attorneys. The sole objection was that an instruction on the party to a crime statute—sec. 939.05, Stats.—was to be given and that section had not been charged in the information against Melvatean Lampkins. The trial court correctly ruled that the instruction was proper. *Bethards v. State* (1970), 45 Wis. 2d 606, 617, 618, 173 N. W. 2d 634. Such objection is not renewed on review.

No other objections were made at the time of trial to the instructions. Objections to the instructions were first presented in postconviction motions by Melvatean Lampkins, but not as to the objections now raised on review. James Lampkins did not directly challenge the instructions.

An objection to instructions at a time when they cannot be corrected is untimely. *State v. Halverson* (1966), 32 Wis. 2d 503, 510, 145 N. W. 2d 739. This court has repeatedly said that an untimely objection to instructions is a waiver of an alleged defect in those instructions.

"Additionally, it can be said that neither defendant personally, nor through his counsel, should be permitted to listen to jury instructions being presented to the jury which he or his counsel believe to be inaccurate or incorrect and await the return of the verdict and, if unfavorable, then complain as a matter of right." *Mitchell v. State* (1970), 47 Wis. 2d 695, 700, 177 N. W. 2d 833.

It has been held by this court that even where there is no timely objection in the trial court, errors in instructions may be reviewed on appeal in cases where the error is so plain or fundamental as to affect substantial rights of the defendant. *Claybrooks v. State* (1971), 50 Wis. 2d 79, 84, 85, 183 N. W. 2d 139. From a review of the record, we are satisfied that situation is not present in the instant cases.

An additional error alleged by defendants with regard to the instructions is that the trial court failed to transcribe the instructions that were reread to the jury. However, since the submission of defendants' briefs, such instructions have been transcribed and filed with the record. They are identical to those earlier given to the jury and no prejudice is apparent. Defendant James Lampkins contends that such inadvertence constitutes reversible error under sec. 270.21, Stats., which provides that a verdict should be set aside and judgment reversed when the trial court fails to transcribe the instructions. We do not agree. Such failure does not per se require a reversal when the instructions are filed late. In the absence of any prejudice by such late filing, reversal is not required.

4. *Was the state's failure to disclose the defendant Melvatean Lampkins' confession to the court during trial and before sentencing prejudicial?*

At the conclusion of the trial and before the state rested, the district attorney offered to submit to the court the police file and the district attorney's file for the purposes of examination for exculpatory evidence.

When asked by defendant's attorney to produce any exculpatory evidence, the prosecuting attorney replied that there was no exculpatory evidence.

At the hearing on postconviction motions, it was alleged that the defendant, Melvatean Lampkins, had signed a confession shortly after her arrest and that in return the police had promised to charge her with third-degree murder. Counsel made an offer of proof to the effect that original defense counsel would testify that Melvatean was promised a third-degree charge if she would sign a confession and furnish information on other matters not involving her. Counsel would further testify that Melvatean did sign a confession and

did give information on other crimes but was still charged with first-degree murder, attempted murder and armed robbery.

The state has a duty to disclose exculpatory evidence. In *Brady v. Maryland* (1963), 373 U. S. 83, 87, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, the United States Supreme Court said:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

The defendant argues that the knowledge of her confession was evidence of a cooperative attitude which would have resulted in a reduced penalty, and the failure of the state to produce the confession was a violation of *Brady*.

We find no merit in the defendant's contention. First of all, the evidence allegedly suppressed is not exculpatory. Though there is little evidence as to the circumstances of the confession, it is just as likely that there was a change of heart on the part of the defendant and that such change of attitude indicating a lack of cooperation would have not resulted in a reduced plea.

Secondly, the defendant was certainly aware of the confession and alleged plea bargain. Therefore, this information was not "in the exclusive possession of the state." The defense could have, on its own, brought the confession to the court's attention to consider at the time of sentencing. In that sense the confession was in no way suppressed and the defense counsel was free to pursue its significance. This court has said in considering an alleged violation of the *Brady* rule and in concluding there was no violation:

". . . An important factor in determining there was no denial of due process is the fact that defendant failed to pursue information that was available to him. . . ."

*State v. Clarke* (1970), 49 Wis. 2d 161, 179, 181 N. W. 2d 355.

Since the confession was available, there was no suppression and there is no violation of the *Brady* rule. Thirdly, the trial court, after finding the confession inculpatory in nature and in finding that the state did not have exclusive knowledge of the confession, clearly indicated that if the confession had been presented to the court the sentence would not have been different.

5. *Was in-court identification of Melvatean Lampkins tainted by an illegal out-of-court identification?*

The defendant, Melvatean Lampkins, participated in two lineups—one on the night of her arrest and one the following morning. She was represented by counsel. She was identified by various witnesses at these lineups, and such witnesses subsequently testified at her trial identifying Melvatean as the woman involved in the robbery. There was no objection to the in-court identifications.

In motions after verdict, Melvatean argues for the first time that the lineups were unfairly suggestive as to her identification and thus tainted the in-court identification of her by those who also identified her at the lineups.

Melvatean's objection is not properly raised. This court has held that the failure to object at the time of the in-court identification is a waiver of any objection to the allegedly tainted identification. *State v. Cole* (1971), 50 Wis. 2d 449, 454, 184 N. W. 2d 75.

Furthermore, the facts of the instant case support a strong inference of waiver. Melvatean was represented by counsel. Having had counsel present at her lineup, and having failed to call him as a witness to impeach the credibility of the in-court identifications, the obvious inference is that the lineups were not suggestive and the identifications were credible.

In any event, notwithstanding the allegedly tainted out-of-court identification, it is clear that the identification of the defendant by the witnesses was independent of any possible taint. The record discloses that all three of the state's witnesses to the lineups identified the defendant positively and promptly. They had a substantial period of time at the scene of the crime to observe the defendant. The lighting was excellent and she was not hidden from view. The witnesses described their attackers to the police immediately after the event and identified them in lineups within twenty-four hours.

We find no merit to defendant's contention. It has been waived, is not supported by the evidence and, in light of the credible in-court identification, there is no prejudice.

6. *Was the evidence sufficient to convict the defendant James Lampkins of first-degree murder?*

The last contention of the defendant, James Lampkins, is that the evidence does not support the verdict of guilt as to first-degree murder. On review in a criminal case the test of the sufficiency of the evidence is ". . . whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove defendant's guilt beyond a reasonable doubt. . . ." *Jensen v. State* (1967), 36 Wis. 2d 598, 607, 153 N. W. 2d 566, 154 N. W. 2d 769; *State v. Laabs* (1968), 40 Wis. 2d 162, 172, 161 N. W. 2d 249.

The three defendants entered the A & P Store with loaded weapons and for the purpose of taking the cash values of the store. It was obviously a planned robbery, and the conspiracy continued until the defendants were apprehended. While James Lampkins was with employees of the store to secure cash, defendant James Cook held off customers with a sawed-off shotgun. Mr. and Mrs. John Adornato entered the store. John Adornato was seventy-eight years of age. He

moved to leave the store; Cook fired a fatal shotgun blast to Adornato's chest and heart. Thereafter, James Lampkins fired his weapon at close range into Clarence Dombrowski, which weapon was aimed at Dombrowski's chest and would have been fatal except for a quick movement by Dombrowski.

If there was a question of whether the plan called for use and firing of weapons, it appears that Lampkins' wounding of Dombrowski ratifies the act of Cook and recognizes that the conspiracy included murder. James Lampkins' failure to withdraw from the scene after the shooting of Adornato indicates his approval of his coconspirator's action. A jury could reasonably believe that Cook's firing of the shotgun was intentional.

Sec. 939.05, Stats., provides in part that whoever is concerned in the commission of a crime may be charged with and convicted of the crime although he did not directly commit it.

We are satisfied that the record reflects unusually strong evidence of a continuing and undissolved conspiracy. The evidence in support of the verdict is clearly sufficient.

### 7. Should a new trial be granted Melvatean Lampkins in the interest of justice?

The defendant, Melvatean Lampkins, asks for a new trial in the interest of justice, under sec. 251.09, Stats. She alleges that certain evidence as to drugs she had taken just prior to the robbery was not introduced and that such evidence, along with her inculpatory statement, would result in a different sentence.

In Lock v. State (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183, we stated:

". . . In order for this court to exercise its discretion and for such a probability [of a miscarriage of justice] to exist we would at least have to be convinced that the

defendant should not have been found guilty and that justice demands the defendant be given another trial. . . ."

We conclude that the defendant was properly convicted of the offenses charged; and it is unlikely that a new trial would bring a different result.

*By the Court.*—Judgment and orders affirmed.

* Motion for rehearing denied, with costs, on September 8, 1971.