James Lee LAMPKINS, Petitioner,

v.

John R. GAGNON, Warden, and the Attorney General of the State of Wisconsin, Bronson C. LaFollette, Respondents.

No. 80–C–983.

United States District Court,
E. D. Wisconsin.

May 12, 1982.

William J. Lundstrom, Legal Assistance to Institutionalized Persons Program, Madison, Wis., for petitioner.

Jerome S. Schmidt, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for respondents.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Petitioner James Lee Lampkins has filed an application for a writ of habeas corpus. He currently is incarcerated at the Wisconsin Correctional Institution, Fox Lake, Wisconsin, serving a sentence for first-degree murder and concurrent sentences for attempted murder and armed robbery. Petitioner challenges the validity of his conviction on two grounds. First, he contends that the trial court erred by giving a jury instruction which the jury could have interpreted as shifting to him the ultimate burden of persuasion on the issue of intent. Second, he contends that the trial court erred in giving the party-to-a-crime instruction because the instruction did not require the members of the jury to unanimously agree on the factual basis for their verdict.

### Motion for Disqualification

Before addressing the merits of the petition, the Court notes that petitioner has filed a motion for disqualification pursuant to 28 U.S.C. § 455(b)(3). Petitioner's asserted ground for the motion is that this Court, while serving as Wisconsin Attorney General, appeared on brief as counsel for the State of Wisconsin in petitioner's direct appeal to the Wisconsin Supreme Court. The Court has no recollection of petitioner's appeal to the Wisconsin Supreme Court. The Court has previously held, under similar circumstances, that it need not disqualify itself solely on the ground that it formerly acted as Attorney General for the State of Wisconsin, since such appearances are *pro forma* and do not actually reflect personal participation or knowledge. *See Muench v. Israel*, 524 F.Supp. 1115 (E.D. Wis.1981). Accordingly, petitioner's motion for disqualification is hereby denied.

### Factual Background

The opinion of the Wisconsin Supreme Court in *Lampkins v. State*, 51 Wis.2d 564,

187 N.W.2d 164 (1971) sets forth accurately the facts which led to the arrest and conviction of petitioner. Briefly stated, on November 21, 1968, petitioner, along with his sister and James Cook, held up a grocery store. During the course of the holdup, petitioner shot and wounded an employee of the store. James Cook shot and killed a patron. Petitioner, his sister, and James Cook all were convicted of murder in the first degree, attempted murder, and armed robbery. For the crime of first-degree murder, the defendants were sentenced to life imprisonment; for the crime of attempted murder, they were sentenced to a term of thirty years; and for the crime of armed robbery, they were sentenced to a term of thirty years. See 51 Wis.2d at 567–69, 187 N.W.2d 164.

### Ground One of the Petition

Ground one of the petition asserts that petitioner's conviction was unlawfully obtained because the trial court gave an unconstitutional jury instruction regarding intent. In *Pigee v. Israel*, 670 F.2d 690 (7th Cir. 1982), the Seventh Circuit held that a jury instruction, essentially the same one challenged by petitioner here, was not unconstitutional. In light of the court of appeals' ruling in *Pigee*, the Court holds that ground one of the petition is without merit.

### Ground Two of the Petition

Ground two of the petition asserts that petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court gave an instruction which failed to require jurors to agree upon what conceptually distinct theory of the party-to-a-crime statute was proved. Petitioner alleges that the instruction violated his rights by relieving the State of its due process requirement to prove every element of the crime beyond a reasonable doubt. Petitioner also alleges that the instruction violated his Sixth and Fourteenth Amendment rights to a jury trial.

The Wisconsin party-to-a-crime statute provides:

939.05 Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw. Wis.Stat. § 939.05.

The trial court instructed the jury regarding the above-quoted statute as follows:

As to each of these cases, I will first instruct you on the law on parties to a crime.

Section 939.05 of the Criminal Code of Wisconsin provides that whoever is concerned in the commission of a crime may be charged with and convicted of the crime although he did not directly commit it.

As applicable in this case, a person is concerned in the commission of a crime if he directly commits the crime or is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is

committed in pursuance of the intended crime and which, under the circumstances, is a natural and probable consequence of the intended crime. (R. 234.)

As indicated above, petitioner's main contention is that the quoted instruction did not require the jurors to agree on what facts were proved by the prosecution, *i.e.*, precisely what petitioner's conduct and mental state were at the time in question. Petitioner argues that, with respect to the first-degree murder charge, "a finding of guilty could be premised upon a finding that petitioner conspired to rob, intended only to commit a robbery, but that the death occurred as a natural and probable consequence of the robbery *or* that petitioner conspired to intentionally kill the deceased *or* that petitioner intentionally killed the deceased." (Petitioner's brief at 57.) As to the attempted first-degree murder charge, petitioner offers an identical analysis. Petitioner maintains that, to satisfy the due process requirement that the State prove every element of the crime beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), at least a requisite majority of jurors were required to agree on the specific basis for their verdict. (Petitioner's brief at 55–56.) Petitioner also argues that the Sixth Amendment right to a jury trial, made applicable to the states through the Fourteenth Amendment, likewise required agreement among a requisite majority of jurors as to the factual basis for their verdict.[1] (Petitioner's brief at 52.)

In support of his arguments, petitioner relies upon the Fifth Circuit's holding in *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977). In *Gipson*, the defendant was convicted of violating 18 U.S.C. § 2313, which imposes criminal liability on one who "receives, conceals, stores, barters, sells, or disposes of" a stolen vehicle in interstate commerce. In response to a question from the jury, the trial court expressly instructed:

If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty under Count Two of the indictment, even though there may have been disagreement within the jury as to whether it was receiving or storing or what. *Id.* at 456.

On appeal, the defendant argued that he was deprived of his federal right to a unanimous jury verdict. The court of appeals framed the issue before it as follows:

In other words, where a criminal statute provides a number of ways of satisfying the actus reus element of an offense, does a defendant's right to a unanimous jury verdict require all jurors to find that element present by reaching substantial agreement as to the facts that satisfy the element before they can return a verdict of guilty?

In analyzing the instruction given by the trial court, the court of appeals determined that the six prohibited acts of the offense fell into two conceptually distinct groupings. The first grouping consisted of receiving, concealing, and storing; the second consisted of bartering, selling, and disposing. The court concluded that, within each grouping, the acts were sufficiently analogous to permit a jury finding of the *actus reus* element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the intra-group acts the defendant committed. The court found this to be so for two reasons. First, it concluded that the acts within each grouping were not conceptually distinct. Second, it concluded that attempting to distinguish among acts within each grouping would present characterization problems.

On the other hand, the court concluded that the two conceptual groups were suffi-

1. Petitioner concedes that unanimity is not a constitutional requirement in state criminal trials. *See Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Nonetheless, petitioner argues that at least a majority of jurors would have to agree upon the factual bases for a conviction. In light of the Court's holding below, it is not necessary to address in detail the effect of *Apodaca* on petitioner's argument.

ciently different so that a jury finding of the *actus reus* element of the offense would not be "unanimous" if some of the jurors thought the defendant committed only an act in the first conceptual group while others believed he committed an act only in the second. The court reasoned that the jurors could be expected to perceive and understand that the conduct prohibited by the first grouping, that relating to the housing of stolen vehicles, was distinct and different from the conduct prohibited by the second grouping, that relating to the marketing of stolen vehicles. The court held that, because the jury was permitted to convict the defendant, even though there may have been significant disagreement among jurors as to what he had done, the jury instruction given by the trial court violated the defendant's right to a unanimous jury verdict.

Petitioner argues that the *Gipson* rationale is applicable to the jury instruction given in his trial in state court. The only distinction petitioner finds between *Gipson* and the instant case is that the former case concerned the "*actus reus*," or conduct element, whereas this case concerns the "*mens rea*," or intent element. To illustrate his contention that the jury instruction given by the trial court did not require unanimity, petitioner offers the following hypothetical situation:

> If nine of twelve jurors voting for conviction were sufficient, two jurors may have concluded appellant directly committed the murder while ten concluded he did not; two jurors may have concluded that appellant aided and abetted in the murder while ten concluded he did not so conspire; and three may have concluded that he conspired to murder while nine concluded that he did not. Although there would be nine guilty votes they would be counter-balanced by not three, but thirty-nine votes for acquittal. (Petitioner's brief at 56 n.24.)

Before examining petitioner's arguments, the Court notes that it is not writing on a clean slate with respect to the Wisconsin party-to-a-crime instruction. In *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979),

the Wisconsin Supreme Court examined the constitutionality of the standard party-to-a-crime instruction under the Wisconsin Constitution. The defendant challenged the party-to-a-crime instruction under Sections 5 and 7 of Article 1 of the Wisconsin Constitution, which guarantees the right to trial by jury. Previous decisions of the supreme court had assumed that the right claimed by the defendant included the right to a unanimous verdict. *See e.g. Vogel v. State*, 138 Wis. 315, 332–33, 119 N.W. 190 (1909); *Boldt v. State*, 72 Wis. 7, 14–16, 38 N.W. 177 (1888). In *Holland*, the court framed the issue before it as follows:

> The question presented is whether this unanimity principle is violated where the trial court instructs the jury, in the disjunctive, as to the various ways a person might be guilty as a party to a crime without requiring the jurors to agree on the applicable theory or theories. 91 Wis.2d at 138, 280 N.W.2d 288.

The court held that unanimity is required "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." 91 Wis.2d at 143, 280 N.W.2d 288. The court reasoned that, "[t]o permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant." *Id.* The court also noted that the party-to-a-crime statute does not create three separate and distinct offenses, as pointed out by the court's decision in *State v. Shears*, 68 Wis.2d 217, 229 N.W.2d 103 (1975). In *Shears*, the court stated that the purpose behind the enactment of the Wisconsin party-to-a-crime statute was to abolish the common law distinction between principals and accessories to a crime. Thus, in *Holland*, the court concluded that the unanimity requirement was satisfied when the jury unanimously found participation by the defendant. 91 Wis.2d at 144, 280

N.W.2d 288. *See also May v. State,* 97 Wis.2d 175, 293 N.W.2d 478 (1980).

Petitioner argues that there are inconsistencies between the Fifth Circuit's decision in *Gipson* and the Wisconsin Supreme Court's decision in *Holland,* even though the *Holland* court appeared to cite *Gipson* with approval. The two cases were, of course, decided on different bases. The holding in *Gipson* was founded upon the Due Process Clause of the Fifth Amendment and upon the federal right to a unanimous jury verdict, as guaranteed by the Sixth Amendment and by Rule 31(a) of the Federal Rules of Criminal Procedure. The holding in *Holland* was based upon the state constitution. Nonetheless, this Court concludes that the supreme court's decision in *Holland* provides guidance in analyzing the petitioner's federal constitutional arguments in the instant case.

As the supreme court noted in *Holland,* the essence of the party-to-a-crime statute is *participation* by a defendant, not the manner of participation. Petitioner attempts to draw conceptual distinctions, as the court of appeals did in *Gipson,* among the kinds of intent which petitioner may have possessed at the time of the crime. Petitioner asserts that being liable for directly committing first-degree murder with the intent to kill is conceptually distinct from being vicariously liable for first-degree murder as a result of having the intent to commit a robbery. As the Court understands petitioner's argument, *Gipson* would require that the jurors agree on the kind of intent petitioner possessed.

 The Court disagrees. As noted previously, the Fifth Circuit in *Gipson* drew a conceptual distinction between two groups of prohibited acts contained in the challenged instruction. The court concluded that the two conceptual groups represented two distinct types of conduct. The Wisconsin party-to-a-crime statute and the related instruction, on the other hand, address only one conceptual type of conduct, *i.e.,* participation in the commission of a crime. The statute specifically imposes liability upon "[whomever] is involved in the commission

of a crime." Wis.Stat. § 939.05. The statute goes on to explain the manner in which a person may be "concerned in the commission of a crime." Each manner of participation, however, relates to the single concept of being involved in the crime. Thus, the Court concludes that the *Gipson* rationale is not applicable to the Wisconsin party-to-a-crime instruction.

The Court holds that the party-to-a-crime instruction did not violate petitioner's constitutional rights. The jurors were required to reach a unanimous verdict on the issue of petitioner's participation in the crimes for which he was convicted. As such, there was no violation of petitioner's right to due process or his right to a jury trial.

For the foregoing reasons, the Court hereby DENIES petitioner's application for a writ of habeas corpus.