James Lee LAMPKINS,
Petitioner-Appellant,

v.

John R. GAGNON, Warden, and Bronson
C. LaFollette, Attorney General of the
State of Wisconsin, Respondents-Appellees.

No. 82–1967.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1983.

Decided June 21, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 9, 1983.

Michael Dwyer, Legal Asst. to Institutionalized Persons Program, Madison, Wis., for petitioner-appellant.

Sally L. Wellman, Madison, Wis., for respondents-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

James Lee Lampkins appeals from the district court's denial of his petition for habeas corpus. First, he seeks to distinguish our holding in *Pigee v. Israel*, 670 F.2d 690 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 103, 74 L.Ed.2d 93 (1982), which held that Wisconsin's standard presumptive intent instruction did not violate *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Second, Lampkins argues that Wisconsin's standard party-to-a-crime instruction violates his right to a unanimous jury verdict.

The opinion of the Wisconsin Supreme Court in *Lampkins v. State*, 51 Wis.2d 564, 187 N.W.2d 164 (1971), and of the district court, *Lampkins v. Gagnon*, 539 F.Supp. 359 (1982), set forth the facts surrounding

Lampkins's and two codefendants' convictions of armed robbery, attempted murder, and murder arising from a 1968 holdup of a grocery store. During the course of the holdup, Lampkins shot and wounded an employee of the store. After the shot was fired, Lampkins twice asked the employee, "I didn't hit you, did I?" Also, during the course of the holdup, a companion of Lampkins became involved in a tussle with a customer and shot him with a sawed-off shotgun. None of the defendants offered any direct evidence at trial.

## I

■ We agree with the district court's implicit decision to find meritless defendants' many arguments of procedural default. At the time Lampkins filed this federal habeas petition, it was clear that pursuit of his claims in state court would be futile. *See Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (Wis.Sup.Ct.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980) (non-unanimity aspect of party-to-a-crime instruction does not violate state or federal law); *Muller v. State,* 94 Wis.2d 450, 468–69, 289 N.W.2d 570, 582–84 (Wis.Sup.Ct.1980) (presumptive intent instruction does not violate state or federal law). Any doubt as to futility has been removed by *State v. Giwosky,* 109 Wis.2d 446, 452–55, 326 N.W.2d 232, 235–38 (Wis. Sup.Ct.1982) (unanimity).

Additionally, Lampkins's failure to object at his trial to the jury instructions challenged here does not prevent federal habeas review of his petition. Wisconsin does not apply its contemporaneous objection rule as an absolute bar to challenges to the constitutionality of jury instructions. *See Lambert v. State,* 73 Wis.2d 590, 607, 243 N.W.2d 524, 532 (Wis.Sup.Ct.1976). *See also Virgil v. State,* 84 Wis.2d 166, 188–91, 267 N.W.2d 852, 863–66 (Wis.Sup.Ct.1978) (failure to object to plain errors will not foreclose review); *Lee v. State,* 65 Wis.2d 648, 653, 223 N.W.2d 455, 457 (Wis.Sup.Ct. 1974) ("the rule ... is not a penalty for oversight or inadvertence"). Most significantly, the Wisconsin Supreme Court in

*Muller v. State, supra,* 94 Wis.2d at 468, 289 N.W.2d at 579, reached the merits of the presumptive intent instruction challenge although Muller's counsel did not object at trial. *See also State v. Giwosky, supra,* 109 Wis.2d at 451 n. 3, 326 N.W.2d at 235 n. 3 (Although there was no objection at trial, merits of a unanimity challenge to a jury instruction reached.).

## II

■ We turn first to Lampkins's challenge to Wisconsin's presumptive intent instruction. Lampkins argues that four aspects of his trial distinguish his case from *Pigee, supra.* First, neither Lampkins nor his codefendants testified or offered any direct evidence. Pigee testified as to his intent and presented other witnesses in support of his theory. *See Pigee v. Israel,* 503 F.Supp. 1170, 1171 (E.D.Wis.1980). Lampkins argues that this distinction is critical; the *Pigee* court indicated that the instruction was permissible in that case because the instruction explicitly indicates that the defendant can rebut the presumption with any evidence of any circumstances, 670 F.2d at 695, and Pigee testified.

We disagree. The crime was a simple one and the evidence was not complex or contradictory. The state's witnesses provided ample testimony supporting Lampkins's theory of the case. Witnesses testified that the killing occurred during a tussle between Lampkins's codefendant and the customer. Others testified that after Lampkins fired the shot, he twice asked, "I didn't hit you, did I?" This testimony provided the evidence of circumstances which rebutted the presumption of intent. It, therefore, removes any possibility that the jury would believe that Lampkins had the burden of persuasion on the issue of intent to kill. *See Pigee,* 670 F.2d at 695.

Second, Lampkins argues that his jury was more likely to be confused about Wisconsin's rules concerning intent than the *Pigee* jury. Pigee's jury received only instructions concerning attempted murder. 670 F.2d at 691–92. Lampkins's jury, however, received intent instructions in three

different contexts. On the armed robbery count the jury was not given the presumptive intent instruction. On the third-degree murder and conspiracy counts, the jury was given the presumptive intent instruction, but the jury was directed to make an objective determination of whether a particular result is a natural and probable consequence of a particular act. In contrast, on the party-to-a-crime and first-degree murder counts, the jury was given the presumptive intent instruction, but the jury was directed to make a subjective determination whether a particular result is a natural or probable consequence of a particular act.

This argument is also unconvincing. There was no need for the presumptive intent instruction in the armed robbery intent instructions, because the direct evidence supported only that conclusion. However, with respect to the conspiracy, first degree murder, party-to-a-crime and attempted murder counts, a permissive intent instruction was rational as an aid to the jury in weighing circumstantial evidence of intent. *See Pigee,* 670 F.2d at 695. We do not see the relevance in a *Pigee* analysis of the distinction between objective and subjective determinations of intended consequences.

A third distinction concerns the fact that the "deliberate acts" language of the presumptive intent instruction was found to be a critical distinction in *Pigee.* 670 F.2d at 694. Lampkins's jury was instructed that ... [the law] does not require that the intent to take human life shall exist for any particular length of time before the crime is committed or that the killing should have been brooded over, considered or reflected upon for a week, a day, an hour, or even for a minute. There may be no appreciable space of time between the formation of the intent to kill and the act of killing. If sufficient deliberation was had to form an intent to take life and to put that purpose into execution by destroying life, then there was a sufficient mental purpose to constitute murder in the first degree.

Lampkins's jury also was informed, as part of the presumptive intent instructions, to consider the natural and probable consequences of deliberate acts and the natural and probable consequences of acts which constitute the commission of a felony. Lampkins argues that the "deliberation" instruction muted the "deliberate acts" language of the presumptive intent instruction, and, along with the "commission of a felony" language, negated the requirement that the jury find a deliberate act.

We do not agree. The jury was capable of understanding the distinction between "deliberation" and "deliberate acts" and of synthesizing the "commission of a felony" language. Lampkins' argument requires a hyper-technical parsing of sentences which few, if any, jury instructions could withstand.

The fourth distinction is that, unlike the *Pigee* jury, 670 F.2d at 691–92, Lampkins's jury received the presumptive intent instruction twice, the second time without the safeguards of the standard instruction concerning the allocation of the burden of proof. Lampkins argues that this distinction is critical because the *Pigee* court indicated that "any conceivable question, however remote, that the jury might have had regarding interpretation of the challenged instruction was removed" by the fact that the "instructions, viewed as a whole, emphasized that the state must prove all elements of the crime beyond a reasonable doubt." *Id.* at 695. This distinction stands alone in this case as an indication of a risk of jury confusion, and, as such, it is too slight a peg to support a finding that the jury was unconstitutionally instructed.

### III

Lampkins argues that the jury instruction on party-to-a-crime liability violated his right to a unanimous jury verdict. The instruction reads:

Section 939.05 of the Criminal Code of Wisconsin provides that whoever is concerned in the commission of a crime may be charged with and convicted of the

crime although he did not directly commit it.

As applicable in this case, a person is concerned in the commission of a crime if he directly commits the crime or is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which, under the circumstances, is a natural and probable consequence of the intended crime.*

Wisconsin interprets this crime as "participation." As observed in *Holland v. State, supra,* 91 Wis.2d at 144, 280 N.W.2d at 298 (1979):

The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation. To require unanimity as to the matter of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue.

Two precedents in this court are relevant. In *Hughes v. Mathews,* 576 F.2d 1250, 1255 (7th Cir.), *cert. denied,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), we held that a state has the power, within constitutional bounds to define its crimes as it wishes. In *Mabra v. Gray,* 518 F.2d 512, 514 n. 3 (7th Cir.), *cert. denied,* 423 U.S. 1023, 96 S.Ct. 466, 46 L.Ed.2d 397 (1975), we stated:

Nor do we believe there is any merit to Mabra's contention that he was denied due process by the failure of the prosecu-

tor to specify in the information which of the three paragraphs in Wis.Stat. § 939.-05(2) (Parties to Crime) he was relying upon. *State v. Cydzik,* 60 Wis.2d 683, 688, 211 N.W.2d 421, 425 (1973).

Wisconsin's party-to-a-crime statute is similar to 18 U.S.C. § 2(a) (1976) which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." We find no case law which indicates that the jury must unanimously agree whether a defendant aided, abetted, counselled, commanded, induced, or procured.

Undaunted by precedent or lack of it, Lampkins relies upon *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), which concerns 18 U.S.C. § 2313 (1976). The statute provides "[w]hoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle ... moving as, or which is a part of ... interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." The *Gipson* court held that the jury must unanimously agree on "the *actus reus* element of the offense," because the prohibited acts are conceptually distinct. 553 F.2d at 458. That is, the acts of receipt, concealment, and storage are conceptually distinct from the acts of bartering, selling, and disposing. *Id.*

We find no constitutional infringement in Wisconsin's decision to make participation in a crime a criminal act. The distinctions between aiding, abetting, and party to a

---

* Section 939.05 provides:

(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

conspiracy, *see* section 939.05(2)b *supra,* are no more conceptually distinct than receipt, concealment, and storage, *see Gipson, supra,* 553 F.2d at 459, and no more conceptually distinct than aids, abets, counsels, commands, induces, or procures, *see* 18 U.S.C. § 2(a).

For the foregoing reasons, the district court's judgment is affirmed.