BUTALA, Plaintiff in error, v. STATE, Defendant in error.

*No. State 221 (1974). Argued February 4, 1976.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 32.)

For the plaintiff in error there was a brief and oral argument by *Henry A. Tessmer* of Milwaukee.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J.   Upon this appeal the defendant does not challenge the sufficiency of the evidence but does contend the statute under which he was convicted, sec. 450.09, is unconstitutional because it is vague and overbroad. He also argues it was error not to grant severance of his case at the trial.

Sec. 450.09, Stats., provides:

**"Placing drugs forbidden.** Except as authorized by law, no person shall put any drug, medicine or chemical, or any compound or combination thereof in any public place, or, without the consent of the owner or occupant upon any private premises, nor cause it to be done."

The charges arose out of a plan to sell the prescription drug procaine which was represented to be cocaine.

Butala allegedly served as a lookout while Picciolo "dropped" the drug in a Milwaukee county park.

The state's chief witness at the trial was Robert Horbinski, an acquaintance of both Picciolo and Butala. In exchange for a promise to seek dismissal of a pending charge, Horbinski agreed, in February of 1973, to help authorities "get" Picciolo on a drug-related offense. Horbinski testified Picciolo was in possession of what he professed to be a pound of cocaine. On the evening of May 29, 1973, Horbinski went to Picciolo's house to discuss plans for selling the drug. Both Picciolo and Butala were there. Horbinski told Picciolo that he had found a buyer and the three discussed the manner in which the sale was to be made. It was decided that Horbinski would meet the "buyer" at a restaurant and call Picciolo if the buyer had the $7,000 purchase price. Butala agreed to accompany Picciolo to the dropsite to watch "to make sure that nothing went wrong." The three then went in Picciolo's car to look for a place to make the exchange. At Butala's suggestion, the trio decided on a location in Dineen Park, a public park, on the north side of Milwaukee at approximately 63rd and West Melvina.

Picciolo and Butala then dropped Horbinski off at the restaurant and returned to Picciolo's house to await Horbinski's call confirming the sale. At the restaurant, Horbinski met with a federal agent who made arrangements to apprehend Picciolo and Butala at the dropsite. Neither Butala nor Picciolo were aware that there was no real buyer for the drug. Horbinski called Picciolo and told him everything was set for the exchange.

Thomas McKale, a city of Milwaukee police detective assigned to the narcotics squad, testified that he was in the area of Dineen Park at approximately 7:30 on the evening of May 29, 1973. He observed a white and silver Cadillac stop at the curb in the 6400 block of West Melvina. The driver, later identified as Picciolo, got out and walked into the park about 25 feet to a large forked

tree. He looked around, took a brown paper bag from under his jacket and placed it on the ground next to the tree. McKale stopped Picciolo as he was returning to the car and placed him under arrest.

James Hardke, an agent for the Wisconsin Department of Justice, was assigned to the surveillance unit in the park and instructed to watch for a lookout. Shortly before 7:30, Hardke was parked in an alley in the 6500 block of Capitol Drive near Dineen Park. He saw a black Pontiac arrive and park in mid-block in the 3900 block of North 64th Street. The driver, identified as Butala, remained in the car with his view directed to the area of the exchange. Following Picciolo's arrest, Butala was held for investigation and, although released the same evening, was later arrested and charged for his role in the scheme.

Special Agent Richard Tewes, a United States Treasury agent assigned to the project, substantiated McKale's testimony regarding Picciolo's arrival and arrest. Tewes performed a field test on the contents of the paper bag. That test indicated that the substance might be cocaine. However, the chemist who later analyzed the substance testified that it was procaine, a synthetic drug with properties similar to cocaine. He also testified that procaine was not on the list of controlled substances.

The jury returned a verdict on October 4, 1973, finding Butala guilty on the charge of placing a drug in a public place, contrary to sec. 450.09, Stats.

An allegation that a statute is vague is based upon the procedural due process requirement of fair notice.[1] The primary issue raised by such a challenge is whether the statute taken as a whole is sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise the judge and jury of standards for the determination of guilt. *State v.*

[1] *State v. Driscoll* (1972), 53 Wis. 2d 699, 193 N. W. 2d 851.

*Zwicker* (1969), 41 Wis. 2d 497, 507, 164 N. W. 2d 512, states:

" '. . . If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.' "

Butala argues that sec. 450.09, Stats., does not define the conduct which is proscribed with the certainty which is required by due process. He points to a number of words and phrases in the statute which, he contends, render it vague. He argues that "[e]xcept as authorized by law" gives no indication of what "law" is referred to; that the word "put" is undefined and therefore susceptible of conflicting constructions; that the word "drug" and the phrases "medicine or chemical" and "any compound or combination thereof" are so broad as to conceivably include any physical object in existence; and that it is not clear what is meant by a "public place" as differentiated from "private premises."

The trial court considered these contentions in its decision on the defendant's motion to set aside the verdict and concluded that, while the statute is "not as clear as may be hoped for," it is constitutionally valid when measured against a test of "common usage" and "reasonable construction." In so holding, the court placed considerable reliance on this court's decision in *State v. Vlahos* (1971), 50 Wis. 2d 609, 184 N. W. 2d 817. In that case the court stated at pages 616, 617:

"Although criminal statutes must meet a rigid test of precision and unambiguity, they should still be construed to give them their fair meaning in accord with the evident intent of the legislature, *United States v. Sullivan* (1948), 332 U. S. 689, 693, 68 Sup. Ct. 331, 92 L. Ed. 297, and language which may otherwise render a statute vague may be considered to have a sufficiently definite meaning because of its common usage or understanding. *Scales v. United States* (1961), 367 U. S. 203, 223, 81 Sup. Ct. 1469, 6 L. Ed. 2d 782. As a general proposition

it may be said that the decisions of the United States Supreme Court upholding statutes as sufficiently certain are based upon the conclusion that they employed language having a meaning well enough known to be understood by those persons whose conduct may fall within the reach of the statutory prohibitions."

It is clear from this analysis that the challenged provisions cannot be viewed apart from either the context in which they are used or the particular conduct to which they are sought to be applied. The words and phrases must be given a meaning which is consistent with their common usage and understanding with due regard to the apparent legislative intent.

Sec. 450.09, Stats., is contained within a chapter of the Wisconsin statutes which primarily regulates pharmacy and the dispensing of drugs. The section was originally created by ch. 366, Laws of 1907, and its present wording was adopted by ch. 448, Laws of 1923. Its history indicates that it was and is intended as a police measure designed to protect the public health and safety. Its general wording indicates an intent to prevent the leaving of drugs, medicines and chemicals in public places or on private premises where persons who are not aware of the potential danger might come in contact with them.

The plaintiff in error's vagueness argument must fail because it cannot be said that he was without notice that his conduct was within the statutory prohibition. In *Jones v. State* (1972), 55 Wis. 2d 742, 746, 200 N. W. 2d 587, this court held, consistent with other authorities, that a defendant may not hypothesize fact situations which might raise a question as to the challenged statute's applicability where the conduct charged is so obviously within the zone of prohibited conduct that no reasonable man could doubt its criminal nature.[2]

---

[2] *See also: State v. Driscoll, supra,* footnote 1; *Jordan v. DeGeorge* (1951), 341 U. S. 223, 71 Sup. Ct. 703, 95 L. Ed. 886.

Butala argues that the phrase "[e]xcept as authorized by law" is vague because it requires a potential offender to guess as to whether the circumstances authorize him to put drugs, medicines or chemicals, etc., in a public place or on private premises. We believe that the commonly understood meaning of the phrase, when viewed in the context of the chapter in which the statute is contained, is that there must be some express statutory authorization for the otherwise-proscribed conduct. There is no contention that Butala had such authorization.

Butala also contends that the word "put" is vague because it is not clear whether it requires intentional conduct or includes, also, inadvertence or accident. As commonly used, the word "put" evinces some voluntary placing or setting of an object or substance in a particular position or in a particular relation with other objects. As such it would exclude inadvertent dropping or losing. Butala's assistance in the volitional act of placing the drug next to the tree is clearly conduct of the nature sought to be reached by the statute.

The categories "drug, medicine or chemical,. or any compound or combination thereof" are said to be imprecise and literally applicable to any object in existence. Of those terms, only "drug" is specifically, albeit broadly, defined in sec. 450.06, Stats. While the other terms are not specifically defined, they should be given a reasonable construction consistent with the apparent legislative intent. The state argues that some element of potential danger must be read into the statute. However, such a construction is unnecessary here because the substance involved was specifically identified as a synthetic drug and was, therefore, clearly within the reach of the statute. Butala believed it to be either cocaine or procaine. They are both drugs.

Finally, Butala contends that one is left to guess at the distinction between "public place" and "private

premises" in determining whether the owner's or occupant's permission is required. The distinction is one which may be readily ascertained by one who wishes to avoid the statute's penalties. A statute is not unconstitutionally vague merely because it places some burden of care or caution on the public.[3] The evidence clearly established that the "drop" was made in a county park intended for use by the public.

The plaintiff in error also claims that sec. 450.09, Stats., is unconstitutionally overbroad. More specifically, he argues that it so fails to define the distinction between prohibited and authorized conduct that it might be used to "criminalize" conduct which is beyond the legitimate reach of the state's police power. He cites several examples of what he considers to constitute innocuous conduct which, he argues, might fall within the statute's broad prohibition. The state asserts that the doctrine of overbreadth can have no application to a statute which does not encroach upon First Amendment rights.

Butala does not argue that his conduct does not fall within the statute's prohibition. Nor does he contend that the legislature could not constitutionally proscribe such conduct. His argument is that the statute might somehow have a chilling effect on or criminalize conduct of others which is protected by the constitution. Ordinarily, however, a litigant lacks standing to assert the constitutional rights of others.[4] It is only where the statute in question tends to chill the exercise of constitutional rights of expression and association that an exception to this standing requirement is recognized.[5] We do

---

[3] *See: State v. Evjue* (1948), 253 Wis. 146, 33 N. W. 2d 305; *State v. Driscoll, supra,* footnote 1.

[4] *Paulos v. Breier* (C. A. 7th Cir. 1974), 507 Fed. 2d 1383.

[5] *See: Driscoll v. Schmidt* (D. C. Wis. 1973), 354 Fed. Supp. 1225; *Dombrowski v. Pfister* (1965), 380 U. S. 479, 486, 487, 85 Sup. Ct. 1116, 14 L. Ed. 2d 22.

not see how the statute here involved could chill or criminalize the exercise of any First Amendment right.

The defendant's principal argument is that sec. 450.09, Stats., is an unconstitutional exercise of the state's police power in that the means chosen to achieve the legislative objective sweep unreasonably broad. However, it is undisputed that the statute was here applied in a manner consistent with the legislative purpose. That purpose is not challenged and the defendant lacks standing to assert the statute's possible applications beyond its intended reach.[6]

The plaintiff in error argues that his right to a fair trial was seriously prejudiced by the fact that he was tried jointly with Frank Picciolo. He asserts that the trial judge committed prejudicial error in failing to grant a motion for severance made just before trial. Butala argues that prejudice was apparent in two respects. First, he points out that the state offered evidence of a previous attempted sale of cocaine by Frank Picciolo in which Butala was not involved. The trial court overruled an objection to the evidence on the ground that it tended to establish a *modus operandi*. The jury was also instructed that it was not to consider the evidence in determining whether Butala was guilty of the offenses charged against him. Butala argues, however, that the cautionary instruction was ineffective to clear jury confusion as to the relevance of the evidence. In addition, he contends that the jury may impute to him a criminal disposition or character created by the evidence as to Frank Picciolo.

Secondly, Butala asserts that a separate trial was required to escape the effect of the state's "preconceived design of entrapment" which was used to apprehend,

---

[6] *See: Milwaukee v. Milwaukee Amusement, Inc.* (1964), 22 Wis. 2d 240, 125 N. W. 2d 625; *Jones v. State, supra.*

charge and convict Picciolo. Butala points out that he was initially released from custody following the original investigation at the scene and contends that this indicates that the agents were specifically interested in getting only Picciolo. His joint trial with Picciolo, Butala argues, painted him "as a bad individual who had to have done something wrong."

The state argues that the trial judge's decision to give the cautionary instruction rather than order a severance did not constitute an abuse of discretion. Further, the state asserts, the alleged second ground for prejudice is without basis in fact because the jury rejected the entrapment defense when it returned the verdicts of guilty.

The joinder and severance of defendants in a criminal prosecution is governed by the provisions of sec. 971.12 (2) and (3), Stats.:

"971.12 **Joinder of crimes and of defendants.** . . .

"(2) JOINDER OF DEFENDANTS. Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

"(3) RELIEF FROM PREJUDICIAL JOINDER. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The district attorney shall advise the court prior to trial if he intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant."

The general purpose of the rule allowing severance is to prevent the jury from becoming confused as to which

evidence is applicable to which defendant.[7] If it appears during the course of a criminal trial that a considerable amount of evidence applicable to only one defendant is being developed, the trial judge has the option of ordering a severance or giving the jury a cautionary instruction to the effect that the evidence against one may not be considered as evidence against another simply because they are being tried together.[8]

In this case the trial judge in the exercise of judicial discretion chose, as he was entitled to do under the circumstances of the case, to instruct the jury that it was not to consider evidence of past criminal conduct on the part of Frank Picciolo in determining the guilt or innocence of Butala. The original motion for severance was based on the ground that the defense had planned to have Butala testify while Picciolo was reportedly not going to testify. In denying that motion, the trial court stated that this was a matter of strategy which could not, standing alone, warrant severance. As it developed, neither Picciolo nor Butala testified. Butala does not contend that the court erred in this ruling but argues only that it should have ordered a severance based on the subsequent developments.

The crimes with which both Picciolo and Butala were charged arose out of the same transaction and were provable by the same evidence. No confessions or statements by either defendant were offered or admitted in evidence and there is no claim that the theories of defense were antagonistic. There was therefore no basis under the statute for a severance and, notwithstanding

[7] See: Nicholas v. State (1971), 49 Wis. 2d 678, 183 N. W. 2d 8.

[8] State v. DiMaggio (1971), 49 Wis. 2d 565, 182 N. W. 2d 466, certiorari denied, 404 U. S. 838, 92 Sup. Ct. 127, 30 L. Ed. 2d 70.

the defendant's arguments, the trial judge did not abuse his discretion in failing to order it.[9]

We conclude the statute under which the plaintiff in error was convicted is not unconstitutional and that he was fairly convicted upon sufficient credible evidence.[10]

*By the Court.*—Judgment and order affirmed.

---

[9] *See: Lampkins v. State* (1971), 51 Wis. 2d 564, 187 N. W. 2d 164.

[10] The plaintiff in error, in his postconviction motions, asked for a new trial because of the insufficiency of the evidence and for a reduction of sentence. These issues are neither raised, briefed nor argued in this appeal and for that reason are not discussed.