STATE of Wisconsin, Plaintiff-Respondent,

v.

Andre L. AVERY, Defendant-Appellant.†

Court of Appeals

*No. 96–2873–CR. Submitted on briefs September 4, 1997.—Decided November 4, 1997.*

(Also reported in 571 N.W.2d 907.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark S. Rosen* of *Rosen and Holzman* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

SCHUDSON, J.   Andre L. Avery appeals from the judgment of conviction, following a jury trial, for one count of first-degree intentional homicide while possessing a dangerous weapon, and two counts of first-degree recklessly endangering safety while possessing a dangerous weapon, all as party to a crime. He also appeals from the trial court order denying his motion for postconviction relief. Avery argues that his trial counsel was ineffective for failing to object to the procedure that allowed his case to be tried together with that of his brother, codefendant Leonard Avery, before two juries simultaneously.[1] He also argues that counsel was ineffective for failing to impeach a State witness with the number of the witness's prior criminal convic-

[1] Leonard Avery also was convicted of the three crimes. Although he also appealed, Leonard did not challenge the dual jury procedure. *State v. Leonard Avery*, No. 95–2759-CR, unpublished slip op. (Wis. Ct. App. Feb. 4, 1997).

47

tions, and that the trial court erroneously exercised sentencing discretion. We affirm.

## I. Dual Juries

With the help of Leonard Avery and a friend, Sackie Roby, Andre Avery shot and killed Chris Davis and wounded two other persons at a Milwaukee tavern on January 15, 1994. At a pre-trial status hearing, the prosecutor informed the trial court that "because of various statements given by Leonard Avery that . . . inculpate Andre Avery and could not be used against Andre Avery because of the *Bruton*[2] problem, . . . the only way legally to properly join [the defendants for trial] at this point . . . would . . . be [to try them] before dual juries." (Footnote added.) Andre's defense counsel responded: "[W]e are not interposing an objection. . . . I have evaluated the situation . . . and I believe that it's in Andre's best interests to proceed with two juries in the same courtroom." Avery argues that counsel was ineffective for failing to object to such a procedure because, he contends, Wisconsin law does not allow for simultaneous trials of two defendants before two juries.

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden to establish both that counsel's performance was deficient and that the deficient performance produced prejudice. *See State v. Sanchez*, 201 Wis. 2d 219, 232–36, 548 N.W.2d 69, 74–76 (1996). We conclude that counsel's failure to object was neither deficient nor prejudicial because, under § 971.12(3), STATS., Wisconsin law does allow for the simultaneous trials of two defendants before two

---

[2] *Bruton v. United States*, 391 U.S. 123 (1968).

juries and, in this case, the trial court carefully employed dual jury procedures that protected Avery's rights.

Avery contends that because the State intended to introduce Leonard's confession, implicating both brothers, at his (Andre's) trial, the trial court would have been required to grant a motion for severance of defendants pursuant to § 971.12(3), STATS., which, in relevant part, provides:

> RELIEF FROM PREJUDICIAL JOINDER. If it appears that a defendant . . . is prejudiced by a joinder . . . of defendants . . . for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires. The district attorney shall advise the court prior to trial if the district attorney intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.

Avery maintains that the simultaneous trials of two defendants before two juries does not satisfy the severance requirement and, therefore, that counsel was ineffective for agreeing to the dual jury procedure. The State responds that "[b]ecause a single trial to multiple juries provides the individual defendants with the same protection they receive in separate trials, the dual jury trial should be considered a form of severance."[3] The State is correct.

---

[3] Alternatively, the State maintains that if the dual jury procedure is not considered an actual form of severance under § 971.12(3), STATS., it should be viewed as "other relief justice requires" under the statute. Avery points out, however, that the statutory reference to "other relief justice requires" falls within that portion of the statute vesting discretion in the trial court to determine when severance "may" be granted; the reference is

In *Butala v. State*, 71 Wis. 2d 569, 239 N.W.2d 32 (1976), the supreme court explained that "[t]he general purpose of the rule allowing severance [of defendants] is to prevent the jury from becoming confused as to which evidence is applicable to which defendant." *Id.* at 579–80, 239 N.W.2d at 37. Although in *Butala* the supreme court was considering discretionary severance of defendants in a case not involving a codefendant's confession, *see id.* at 580, 239 N.W.2d at 37, we conclude that the "general purpose" of preventing confusion "as to which evidence is applicable to which defendant" holds true in cases of mandatory severance. *Id.* at 579–80, 239 N.W.2d at 37; *see also United States v. Hayes*, 676 F.2d 1359, 1366 (11th Cir. 1982). In cases in which the evidence includes a confession of a codefendant implicating the defendant, however, that "general purpose" combines with the constitutional principle requiring severance in order to protect the defendant's Sixth Amendment right of confrontation. *See Bruton v. United States*, 391 U.S. 123, 126 (1968).

In *Bruton*, the United States Supreme Court considered "whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence." *Id.* at 123–24. The Court concluded that a jury instruction is inadequate to ensure that the

not repeated in the subsequent two sentences mandating severance when the State intends to use a codefendant's confession. *But see People v. Church*, 429 N.E.2d 577, 584–85 (Ill. App. Ct. 1981) (concluding that Illinois severance statute's reference to "other relief justice requires" permitted use of dual juries).

jury will not improperly consider the codefendant's confession against the defendant. The Court explained:

> "In joint trials, . . . when the admissible confession of one defendant inculpates another defendant, *the confession is never deleted from the case* and the jury is expected to perform the overwhelming task of considering it in determining the guilt or innocence of the declarant and then of ignoring it in determining the guilt or innocence of any codefendants of the declarant. A jury cannot 'segregate evidence into separate intellectual boxes.' "

*Id.* at 131 (quoted source omitted) (emphasis added). Therefore, regardless of the limiting instruction, some juries inevitably would consider a codefendant's confession against the defendant. The Court explained that although the defendant would have the Sixth Amendment right to cross-examine the codefendant, the exercise of that right would be impossible at a joint trial because the codefendant could not be compelled to testify. *See id.* at 135–37. The only solution, the Court concluded, is severance of defendants. *See id.* at 126–27.

Thus, in *Bruton*, the Supreme Court connected the Sixth Amendment right of confrontation and the necessity of severing defendants to the fact that "the confession is never deleted from the case." *Id.* at 131 (internal quotation marks and quoted source omitted). The Court, however, did not otherwise suggest that joint trials were inappropriate. Indeed, the Court acknowledged the value of joint trials, reiterating that they "do conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Id.* at 134. Logically, therefore, if a confession could be "deleted

from the case," severance would not be required or, viewed somewhat differently, if the confession could be "deleted from the case," severance would be accomplished. That is exactly what occurs when a defendant and codefendant are tried simultaneously before two juries, and the defendant's jury is excused from the courtroom so that it does not receive inadmissible evidence.

In this case, Leonard Avery's jury received the evidence of Leonard Avery's confession; Andre Avery's jury did not. When the State introduced Leonard's confession, the trial court excused Andre's jury from the courtroom. Moreover, the trial court took additional precautions to protect Andre's rights. As summarized in the trial court's written decision denying Andre's postconviction motion:

> Both jury panels were sequestered to preclude exposure to any possible media coverage, coverage which might have revealed evidence as to one defendant not admitted as to the other. The jury panels had separate jury rooms, including separate restroom facilities. Two teams of bailiffs supervised the jury panels—one assigned to each—to ensure they were kept separate. The court reporter was directed to note whether one or both jury panels were present. Throughout the proceedings, these procedures were monitored to ensure compliance.
> During the trial, there was separate jury selection, separate opening and closing statements, and separate jury instructions. The jury of one defendant was excluded from the court during the presentation of evidence inadmissible as to that defendant. Prior to resuming testimony and before bringing the panels into the courtroom, the court

reviewed with counsel whether both or only one panel should be brought in for the next witness.

Thus, the evidence before Andre's jury at this joint trial was exactly what the evidence would have been had Andre been tried alone. Therefore, under *Bruton*, and under the mandatory severance portion of § 971.12(3), STATS., we conclude that the dual jury procedure provided severance of the defendants.[4]

## II. Roby's Prior Convictions

Avery argues that counsel was ineffective for failing to impeach Sackie Roby with the number of Roby's prior criminal convictions, and for failing to pursue that fact in closing argument. We conclude, however, that because the jury already had been informed that Roby had been convicted of three crimes arising from the very shooting for which Avery was on trial and because counsel, in closing argument, challenged Roby's credibility based on his participation in the shootings and his cooperation with the State, counsel's

---

[4] Although this is the first Wisconsin decision to address this issue, courts of numerous other jurisdictions have concluded that the dual jury procedure constitutes or accomplishes severance (or what some courts term, "partial severance") of defendants. *See, e.g., United States v. Hayes*, 676 F.2d 1359, 1366 (11th Cir. 1982); *United States v. Rowan*, 518 F.2d 685, 689 (6th Cir. 1975); *United States v. Sidman*, 470 F.2d 1158, 1170 (9th Cir. 1972); *Hedlund v. Sheldon*, 840 P.2d 1008, 1009 (Ariz. 1992); *People v. Cummings*, 850 P.2d 1, 35 (Cal. 1993); *People v. Hana*, 524 N.W.2d 682, 693 (Mich. 1994); *People v. Ricardo B.*, 535 N.E.2d 1336, 1338 (N.Y. 1989).

Avery also argues that "inherent prejudice exists in two brothers being tried together." As the State points out, however, Avery has offered no authority for this proposition, the acceptance of which would always require separate trials for siblings.

failure to ask or argue the number of Roby's convictions was neither deficient nor prejudicial.

On direct examination, the prosecutor elicited Roby's testimony revealing that he had been charged with killing Davis and wounding two tavern patrons; that he had become a witness for the State "[t]o get a lesser charge"; that he had pled guilty to a lesser homicide charge and two lesser endangering safety charges; that he faced forty-three years in prison; and that he had not yet been sentenced. Defense counsel cross-examined Roby, eliciting the further acknowledgment that one reason he pled guilty was to avoid exposure to a life sentence that could have kept him from ever seeing his children again. In closing argument, counsel emphatically argued that, given Roby's commission of the crimes, his obvious motive to get "the best deal" from the State, and his fear "of going to prison for the rest of his life," Roby should not be believed.

Thus, because Roby's specific crimes were presented to the jury, and because counsel challenged his credibility in closing argument based on those very crimes, counsel was able to impeach Roby with his convictions far more effectively than in the ordinary case in which counsel would only have been allowed to elicit and argue the number of prior convictions. *See* § 906.09, STATS.; *see also State v. Sohn*, 193 Wis. 2d 346, 353, 535 N.W.2d 1, 3 (Ct. App. 1995). ("The witness may be asked if he or she has ever been convicted of a crime and, if so, how many times. If the witness's answers are truthful and accurate, then no further inquiry may be made.") (Citation omitted.) Under these circumstances, the fact of *three* prior convictions either would have been of no significance or, actually, would have been counterproductive for the defense by estab-

lishing that Roby's crimes connected to the shooting were his *only* offenses. Therefore, counsel's assistance was not ineffective.[5]

## III. Sentencing

The trial court sentenced Avery to life imprisonment for the homicide, with a parole eligibility date in 2039, and to consecutive nine-year terms for the recklessly endangering offenses. Avery argues that the trial court, in numerous comments, gave too much or too little emphasis to various factors. He notes that the trial court "spent 17 pages of transcript discussing sentencing factors, but only spent one half a page considering Defendant's positive personal character." He contends:

> [T]he sentencing court did not adequately consider such factors as Defendant's minor record that involved no felony convictions, that he was a capable student, and that he had the support of a strong family. Defendant also had held various types of employment. Although the court mentioned these, the court improperly abused its discretion in minimizing these factors in considering the factor of Defendant's character and rehabilitative potential/needs.

---

[5] Avery also argues that the trial court erred in not holding an evidentiary hearing to evaluate his ineffective assistance of counsel claims. On neither of these two claims, however, are any facts in dispute. On both issues, "the record conclusively demonstrates that [Avery] is not entitled to relief" and, therefore, the trial court properly exercised discretion in denying Avery's motion without holding an evidentiary hearing. *See State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50, 53 (1996).

A trial court is required to exercise discretion in sentencing and must consider "the gravity of the offense, the character of the offender, and the need for protection of the public." *State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183, 192 (Ct. App. 1984). The trial court may also consider: the defendant's record; the defendant's history of undesirable conduct; the defendant's personality, character and social traits; the presentence investigation reports; the viciousness or aggravated nature of the crime; the defendant's demeanor at trial; the defendant's age; educational background and employment record; the defendant's remorse, repentance or cooperativeness; the defendant's rehabilitative needs; and the defendant's pretrial detention. *See State v. Jones*, 151 Wis. 2d 488, 495–96, 444 N.W.2d 760, 763 (Ct. App. 1989). Significantly for purposes of this appeal, "[t]he weight to be given each factor is within the discretion of the trial court." *Wickstrom*, 118 Wis. 2d at 355, 348 N.W.2d at 192. We will affirm a sentence if the record shows it to have been a proper discretionary decision emanating from "a process of reasoning based on legally relevant factors." *Id.* at 355, 348 N.W.2d at 191.

The trial court specifically addressed the three required criteria. The court acknowledged several mitigating factors and considered letters from Avery's friends and family members. The court referred to his family circumstances, education, employment history, and relatively minor record. The court noted, however, that although his criminal record was minimal, Avery did admit to carrying guns and selling drugs. The court mentioned Avery's alcohol and substance abuse treatment needs.

Understandably, the trial court gave greatest emphasis to the death of Chris Davis, the very serious injuries to the other two innocent victims, and the excruciating impact on the victims and their families. Denying Avery's postconviction motion, the trial court further clarified that "the nature of the crime—an execution-style killing—and the consequences—one person dead and two people injured, was of paramount importance" leading to a sentence that would ensure that the public would be protected from him in the future. We conclude that the trial court properly exercised sentencing discretion.

*By the Court.*—Judgment and order affirmed.