COURT OF APPEALS
DECISION
DATED AND FILED

January 31, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2279-CR**

Cir. Ct. No. 2018CF5908

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KEVIN MICHAEL BOON, N/K/A KEVIN MICHAEL BOON-BEY,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1   PER CURIAM.   Kevin Michael Boon,[1] *pro se*, appeals his judgment of conviction for causing mental harm to a child, chronic neglect of a child causing emotional damage, and false imprisonment, all as a party to a crime.   Boon raises numerous issues on appeal; however, we limit our review to those issues that were properly preserved in the trial court, which include a challenge to the jurisdiction of the trial court; alleged judicial bias of the trial court; an alleged discovery violation; the trial court's refusal to empanel dual juries; and an alleged due process violation based on the mislabeling of the State's motion in limine.   We reject Boon's claims and affirm.

## BACKGROUND

¶2   The charges against Boon were filed after a police officer from the Cudahy Police Department responded to two calls in December 2018 regarding the physical abuse of P.H.   The officer eventually found P.H., who was fifteen years old at the time, in an upstairs bedroom, wearing tattered clothing and smelling strongly of urine and feces.   She had bruising to her right eye and upper lip, lacerations on her face and head, and was unable to put much weight on her right leg as she walked.   She was shaking and very scared.   The officer attempted to ask P.H. questions about the situation, but family members kept interjecting to keep P.H. from answering.

¶3   The officer took P.H. to the police department.   She told the officer that she had not had anything to eat or drink in three days, and that she had not bathed in three weeks.   P.H. stated that she had been burned with scalding water, and her back and feet were severely burned.   She further stated that her wrists had been bound, and the officer observed marks on her wrists consistent with that

---

[1] Midway through these proceedings, Boon changed his name to Kevin Michael Boon-Bey.

2

allegation. The officer also saw signs of trauma on P.H.'s entire left arm. The officer was "shocked" at the extent of P.H.'s injuries, and called the fire department to evaluate her. She was then transported to Children's Hospital.

¶4    P.H. later explained in a more extensive interview with another officer, and in a subsequent forensic interview, that she lived with her father, Boon, and her stepmother, Felicia Boon, along with several siblings and other relatives. She was pulled out of school in November 2017 to be home-schooled by Felicia. Since August 2018, she said she had been forced to stay in her bedroom most of the time. She said that Boon put an alarm on her bedroom door and zip-tied it shut to keep her from coming out. She only had one outfit—the extremely soiled clothing she was found in. She also said she was forced to be naked in her room at night with no blankets to ensure she would not try to flee. Her meals were delivered to her room, and she was being fed only once a day. By late October 2018, she was not even allowed out of her room to use the bathroom; when she urinated or defecated on the floor, she was beaten.

¶5    P.H. described much of the physical abuse as being committed by S.L., a cousin who lived at the residence; S.L. was also fifteen years old at the time of the abuse. P.H. stated that S.L. had been "acting as the disciplinarian of P.H. on behalf of the parents." It was estimated that S.L. had burned P.H. with scalding hot water approximately twenty times. Additionally, P.H. said that S.L. had beaten her with a belt given to her by Felicia, and had choked P.H. in front of Boon.

¶6    On the day she was found, P.H. stated she was able to sneak out of her bedroom and gain access to a cell phone which she used to call her aunt for help, asking her to call the police. When the family found out about that call, P.H. said

3

that S.L. had zip-tied her wrists and ankles and then beaten P.H. with a metal pole before the officer found her.

¶7     P.H. said that she would yell and scream when she was being beaten by S.L., and that neither Boon nor Felicia ever attempted to stop it.  She also said that Felicia had repeatedly seen the injuries suffered by P.H., and did nothing. Furthermore, it was disclosed that Boon and Felicia had whipped P.H. themselves with a belt on several occasions, and that Felicia had shaved off P.H.'s hair without using a guard on the clippers.  Additionally, when officers returned to Boon's residence and received consent from Felicia to search P.H.'s bedroom, they found an ice cream bucket with urine in it, a bedframe with no mattress, pillows, or blankets, and an empty dresser.

¶8     Boon and Felicia were arrested and charged with repeated acts of physical abuse of a child causing bodily harm; mental harm to a child; false imprisonment; and three counts of chronic neglect of a child, for nutritional neglect, failure to provide medical care, and failure to provide appropriate shelter and security.  All counts—except for the charge of chronic neglect for failing to provide medical care—were charged as a party to a crime.

¶9     Boon was appointed an attorney.  However, he filed several *pro se* documents, generally asserting that he was "subject only to the laws of '[a]lmighty God.'"  Boon's attorney subsequently filed a motion to withdraw at the request of Boon.  Counsel stated that he was unclear as to whether Boon was seeking new counsel or wished to proceed *pro se*, but counsel had advised Boon that the trial court had to approve his request.  At a hearing on the motion held in May 2019, the trial court attempted to ascertain Boon's wishes; Boon responded, "in order to proceed, I first require the court to recognize I'm appearing in special appearance

4

as a Beneficial Equitable Title Holder on matters involving Kevin Will Trust in this matter," and referenced several nonsensical "rights" that he had asserted in his *pro se* filings.

¶10    The trial court stated that it did not recognize any of those rights, and asked Boon again whether he wanted counsel to remain as his attorney. Boon responded that "[counsel] does not represent Kevin Boon nor the Kevin Boon Trust." The court tried repeatedly to clarify Boon's response, eventually finding that despite Boon's indirect answers, "it would seem that [Boon] does not want [counsel] to be his lawyer," and granted the motion to withdraw.

¶11    The trial court then attempted to determine whether Boon wanted a new attorney appointed or wanted to proceed *pro se*. Boon again responded with statements that did not directly answer that question, instead stating that he "would like to take continuous steps in proper representation as just like I attempted to file such paperwork and additional paperwork, and based upon the response from the court, a determination will be made." The court explained to Boon that his filings had not been accepted previously because he had been represented, and that all papers were required to be filed electronically. The court further explained that if he wanted to represent himself, the court would make that determination after a competency hearing, but in the meantime it could not make decisions about the documents Boon had filed. Boon nevertheless still refused to directly answer the question of representation.

¶12    The State suggested that Boon be given instructions from the Clerk of Courts office on how to file documents electronically. It further noted that to the extent it had been able to decipher Boon's filings, they were baseless, and anticipated that the trial court would deny them. Once that happened, the State

5

believed that Boon would likely decide he wanted an attorney going forward, noting "I think he thinks he's smarter than he is in the law, quite frankly, and I think once he realizes that the motions he has filed with the court are meritless and baseless, perhaps then he will change his mind" about how he wanted to proceed with the case. The court then set the matter for a hearing the following week to determine Boon's competency to proceed *pro se*.

¶13    At the next hearing, held a week later, Boon asserted that his trial counsel had not returned "any of the discovery needed" to prepare his defense, and contended that he could not make a decision about representing himself without reviewing that discovery. The trial court explained the proceedings were in "limbo" without obtaining Boon's decision on whether he wanted representation, to which Boon responded that he was taking "steps" to make that determination, and had spoken with a couple of lawyers about his case.

¶14    During this time, Felicia had obtained new counsel. The trial court noted that the trial was set to start approximately two months from that hearing date, and that the court had advised Felicia's new counsel that it "would not be sympathetic to a request to change the trial date," due to the number of witnesses involved and the logistics of scheduling. The court further stated that Boon had been "equivocal" about whether he wanted representation, and that it would not delay the trial because Boon was "dragging [his] feet" about making a decision. The court then granted Boon an additional week to make his decision.

¶15    At a status conference two weeks later, Boon informed the trial court that he was still waiting for a response from a law firm about representation. The court reminded Boon that the trial date was set, and that any attorney he retained would have to be amenable to that time frame.

¶16 Additionally, the State noted that it had contacted Boon's previous trial counsel and confirmed that he had turned over all discovery to Boon. The State further noted that while Boon claimed to not have received all of the discovery, the items he said he was missing were available electronically, and that Boon would have access to them if he decided to represent himself and sign into the electronic filing system. Boon asked about getting access and being able to file documents, and the trial court again explained to him the procedure regarding proceeding *pro se*, and reiterated that it could not accept any motions from Boon until it was determined that he was proceeding *pro se*—especially since Boon had indicated that he was attempting to retain counsel. The court then scheduled the case for another status hearing in ten days.

¶17 At that status hearing, Boon informed the trial court that he still did not have an attorney, and that his previous discussions with attorneys regarding representation had terminated. The court then stated it would have an attorney appointed to represent Boon, but Boon objected to having an appointed attorney. The court thus told Boon that he would not have an attorney unless he retained one, which Boon acknowledged he understood.

¶18 The trial court then began a colloquy with Boon regarding proceeding *pro se*. Boon stated that he was "answering these questions under duress" because he was being "forced to operate outside [his] constitutional rights," to which the court responded that it had not even asked any questions yet. The court indicated that it would address Boon's concerns, but that Boon's "saying words with nothing to back them up" rendered them simply "meaningless words." Boon continued to maintain that he was not *pro se*, but rather was in court on "special appearance"; the court stated that Boon could "use whatever words" he wanted to, but that when someone represents themselves, the court "call[s] that *pro se*."

¶19     The trial court then engaged in the self-representation colloquy with Boon and determined he was competent to represent himself.  The court noted that Boon still had not directly answered the question of whether he wanted to proceed *pro se*, but based on the fact that he declined the appointment of another attorney and had failed to retain his own attorney while continuing to make his "special appearance," the court found that he had knowingly waived his right to representation.  The court further noted that Boon could retain an attorney if he so chose.

¶20     At the final pretrial conference approximately a week later, Boon again complained that he had not received all the discovery materials back from his former counsel.  The trial court attempted to clarify whether these were actual discovery materials from the State, or merely documents that Boon had provided to counsel himself; Boon claimed it was a combination of both types of materials.  The court then ordered the State to send Boon an inventory of its discovery materials, so that Boon could determine what items, if any, he was missing.  The State provided that information three days later.  Additionally, Boon's former counsel submitted a letter to the court explaining that he had written to both Boon and the State regarding "all the discovery or any other case-related document not on efile," and that counsel believed Boon had "everything."  Counsel stated he had also explained to Boon that the case-related documents were available electronically, and had included links and instructions for Boon to register for the electronic filing system.

¶21     Boon filed several pretrial motions, including one asserting that he was a member of the Choctaw Muskogee Yamasee Nation, and thus the Wisconsin state courts were without jurisdiction to preside over the charges against him.  He contended that this matter should be removed from state court, which would allow for the Indian Child Welfare Act to be applied.  Boon filed a corresponding action

in the Eastern District of Wisconsin against Michael J. Hanrahan, the judge presiding over Boon's case in Milwaukee County, and Matthew J. Torbenson, the prosecutor, making the same claim. *See **Boon-Bey v. Hanrahan, et al.***, No. 19-CV-1006-JPS, unpublished slip op. (E.D. Wis. Sept. 25, 2019).[2] Hanrahan and Torbenson filed a motion to dismiss in that case on the grounds of, among other things, failure to state a claim upon which relief could be granted, because the Indian Child Welfare Act relates to child custody matters. *See id.* at 2-3. The district court agreed with their arguments, noting that Boon's response to the motion was complete "gibberish" that the court "[would] not engage with," and ultimately dismissed Boon's suit with prejudice. *See id.* at 3-4.

¶22 In the meantime, Boon also filed a pretrial motion seeking the trial court's recusal, based on the lawsuit he had filed in federal court. The State argued that pursuant to *State v. McBride*, 187 Wis. 2d 409, 523 N.W.2d 106 (Ct. App. 1994), "the mere fact that a party files a complaint against a judge is not sufficient to establish judicial bias." *Id.* at 418. The trial court noted its belief that Boon's lawsuit was meritless and would likely be dismissed—which, as noted above, it eventually was. The court further observed that it would not incur any personal costs because of the action, such that its own "personal interests" would not be affected, thus giving it no reason to be anything but impartial toward Boon. It therefore rejected Boon's motion for recusal.

¶23 Boon also renewed his claim that he had not received all discovery materials. He alleged that he had been told there was a "gag order" on P.H.'s school records. The State pointed out that the time frame indicated in the charging

---

[2] We may take judicial notice of the order in the federal case pursuant to WIS. STAT. § 902.01 (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

documents was while P.H. was being home-schooled, so her school records had not been requested by the State. The trial court also addressed Boon's claim regarding discovery of P.H.'s prior medical records. The State informed the court that P.H. was asserting privilege as to those records; as such, the court stated that should either Boon or Felicia seek their admission to offset purported inconsistent testimony, it would perform an in-camera review to determine relevance and admissibility.

¶24 Boon also raised a ***Brady*** claim, reiterating his allegation that the State had not provided him with all discovery.[3] The trial court referenced its previous order for the State to provide an inventory of its discovery and for Boon to respond if he was missing anything on that list, stating that if Boon had not received everything "it was [his] own fault[.]" The court further found Boon's allegations regarding having received no discovery to be "disingenuous," suggesting that Boon's claims were designed to delay the start of trial.

¶25 With regard to Boon's other numerous pretrial filings, the trial court noted that it had read them all, and that in some cases it was not able to discern if they were "actual motion[s] or simply declarations of his position[.]" But, in any event, it was denying all of Boon's motions.

¶26 Additionally, counsel for Felicia requested a "dual jury," out of concern that Boon's self-representation would have a prejudicial effect on Felicia. Felicia's counsel cited ***State v. Avery***, 215 Wis. 2d 45, 53, 571 N.W.2d 907 (Ct. App. 1997), where this court recognized that the dual jury procedure utilized by the trial court in that case "provided severance of the defendants," as required under

---

[3] *See **Brady v. Maryland***, 373 U.S. 83 (1963).

WIS. STAT. § 971.12(3), when there is a potential for prejudice against a co-defendant.

¶27    The trial court rejected Felicia's request, finding that it would "significantly delay the proceedings" given that this request was being made on the day the trial was beginning; the trial court noted this was a "significant factor" in its decision. It further observed that counsel had been aware of the circumstances of the case since he had come on as Felicia's counsel, and had not previously made a motion to sever. However, the court offered to consider a curative jury instruction from Felicia to address any concerns relating to Boon's self-representation.

¶28    The matter proceeded to trial in July 2019. Witnesses for the State included P.H., as well as the officer who found her, the aunt she called which in turn initiated her rescue, and the officer who conducted her forensic interview. The doctor from Children's Hospital who examined P.H. also testified as to her observations of P.H. when she was found. Additionally, the doctor is a child abuse expert, and testified that P.H.'s "entire presentation is a diagnosis for severe child physical abuse and torture"—that her "[o]ngoing injury" from "head to toe" created a "risk of death." Boon and Felicia also chose to testify on behalf of each of their defenses.

¶29    The jury found Boon guilty of three of the six counts against him: causing mental harm to a child, chronic neglect of a child causing emotional damage, and false imprisonment, all as a party to a crime.[4] He was sentenced to six years of initial confinement followed by five years of extended supervision on the mental harm and chronic neglect counts, and three years of initial confinement

---

[4] The jury also found Felicia guilty of four of the six counts against her.

followed by three years of extended supervision on the false imprisonment count, all to be served concurrently. This appeal follows.

## DISCUSSION

¶30 For Boon's appeal, it is difficult to ascertain the claims Boon is raising, as well as to discern which of those claims were preserved in the trial court below. However, we have determined that the following issues may be reviewed: the jurisdiction of the trial court; alleged judicial bias by the trial court; the **Brady** claim alleging discovery violations by the State; the trial court's refusal to empanel dual juries; and an alleged due process violation based on the mislabeling of the State's motion in limine. We address each of them in turn.

*Jurisdiction*

¶31 "Criminal subject-matter jurisdiction is the 'power of the court to inquire into the charged crime, to apply the applicable law and to declare the punishment.'" *State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302 (Ct. App. 1994) (citation omitted). The trial court "lacks criminal subject-matter jurisdiction only where the complaint does not charge an offense known to law." *Id.* "Whether a trial court lacks subject matter jurisdiction is a question of law, which we review *de novo*." *State v. Schroeder*, 224 Wis. 2d 706, 711, 593 N.W.2d 76 (Ct. App. 1999).

¶32 Boon's jurisdiction claim revisits his assertion that this matter should have been removed from state court because the issues involved were subject to the application of the Indian Child Welfare Act. As discussed above, Boon's action in the Eastern District of Wisconsin regarding this claim was dismissed with prejudice for failing to state a claim upon which relief could be granted, because the Indian

12

Child Welfare Act relates to child custody matters, not criminal matters involving a parent.

¶33 Furthermore, "a state has jurisdiction to try an Indian for an offense committed outside of the reservation boundaries but within the state, without resort to an interpretation of the various treaties existing between the federal government and the Indian tribe in question." *Sturdevant v. State*, 76 Wis. 2d 247, 252-53, 251 N.W.2d 50 (1977). The crimes for which Boon was charged and convicted occurred at his residence in Cudahy.

¶34 Therefore, we conclude that the trial court had jurisdiction over this matter, and reject Boon's claim.

*Judicial Bias*

¶35 As discussed above, Boon's claim of judicial bias relates to his jurisdiction claim and the related action he filed in federal court against the trial court and the prosecutor. In reviewing a claim of judicial bias, this court presumes that "the judge was fair, impartial, and capable of ignoring any biasing influences." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. "A defendant may rebut the presumption by showing that the appearance of bias reveals a great risk of actual bias." *State v. Herrmann*, 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772. We review claims of judicial bias *de novo*. *See McBride*, 187 Wis. 2d at 414.

¶36 Boon fails to overcome that presumption. As the trial court explained when it addressed Boon's motion for recusal, Boon's case filed in federal court provided no motivation for the trial court not to be impartial toward Boon, since the trial court believed the case was meritless, and further noted that it did not have to

personally defend itself in the action. Moreover, the record shows no indication of the trial court demonstrating any lack of impartiality against Boon. We therefore reject this claim.

### *Brady* Claim

¶37 Under ***Brady***, a defendant "has a due process right to any favorable evidence 'material either to guilt or to punishment' that is in the State's possession[.]" ***State v. Wayerski***, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468 (quoting ***Brady v. Maryland***, 373 U.S. 83, 87 (1963)). This court "independently review[s] whether a due process violation has occurred, but we accept the trial court's findings of historical fact unless clearly erroneous." *See Wayerski*, 385 Wis. 2d 344, ¶35.

¶38 To establish a ***Brady*** violation, it would have to be shown that: (1) the evidence was favorable to Boon, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence was material. ***Wayerski***, 385 Wis. 2d 344, ¶35.

¶39 Boon's claim seems to focus on P.H.'s prior medical records. The trial court accepted P.H.'s claim of privilege for these records, and thus ordered that it would conduct an in-camera review should either Boon or Felicia seek to admit them to offset any testimony that they contend is inconsistent.[5]

¶40 Boon apparently believes these medical records contain exculpatory information, although the trial court determined that Boon did not understand the

---

[5] It appears from the record that P.H.'s prior medical records included past mental health treatment; the trial court opined that this evidence could be admissible upon a proper showing by either defendant.

meaning of "exculpatory." Furthermore, the record indicates that Felicia was in possession of P.H.'s medical records that Boon sought, thus inferring that they had not been suppressed. Therefore, the factors for establishing a *Brady* violation have not been met. *See Wayerski*, 385 Wis. 2d 344, ¶35.

¶41 Additionally, in addressing this issue, the trial court referenced its earlier order for the State to provide an inventory of its discovery and for Boon to respond if he was missing anything on that list. The court found that Boon had not followed that order, suggesting that he was being "purposefully difficult" with regard to discovery in order to delay the case. That finding is supported by the record, and "[a] defendant cannot create his own error by deliberate choice of strategy and then ask to receive benefit from that error on appeal." *State v. Gary M.B.*, 2004 WI 33, ¶11, 270 Wis. 2d 62, 676 N.W.2d 475 (citation omitted; brackets in *Gary M.B.*). Furthermore, the record indicates that the State was compliant and very cooperative with the trial court's order relating to discovery.

¶42 Moreover, the trial court observed that neither Boon nor Felicia provided a permissible purpose for admitting the medical records. The exclusion of evidence is within the trial court's discretion, and we will not overturn that discretionary decision unless the trial court "applied the wrong legal standard in the exercise of its discretion or ... the facts of record fail to support the [trial] court's decision." *State v. Sarfraz*, 2014 WI 78, ¶35, 356 Wis. 2d 460, 851 N.W.2d 235 (citation omitted; ellipses in *Sarfraz*).

¶43 As a result, we reject Boon's claim that a *Brady* violation occurred here.

*Request for Dual Juries*

¶44    A request to empanel a dual jury is an alternative to severing a co-defendant's case pursuant to WIS. STAT. § 971.12(3). *Avery*, 215 Wis. 2d at 49. The trial court employs its discretion in deciding whether severance is appropriate. *See State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609.

¶45    Here, the trial court refused Felicia's request to empanel a dual jury primarily because of the last-minute nature of the request. Furthermore, the circumstances in *Avery*, where a dual jury was utilized, included a confession by one of the defendants that implicated the other defendant, raising concerns about the risk of prejudice that WIS. STAT. § 971.12(3) seeks to avoid. *Avery*, 215 Wis. 2d at 49. Those circumstances were not present here.

¶46    In short, the facts of the record support the trial court's discretionary decision on this issue. *See Sarfraz*, 356 Wis. 2d 460, ¶35. We therefore reject Boon's claim.

*Due Process Claim*

¶47    This claim by Boon is based on the State's caption for its motion in limine. Boon complains that the State did not use his full name—Boon-Bey—which he changed midway through these proceedings. He also asserts that only Felicia's name was listed on the motion in limine.

¶48    As the trial court noted at sentencing, Boon had not filed a motion during the proceedings to change the caption of the case after his name change; therefore, that part of his claim is a non-issue. With regard to the motion in limine naming only Felicia, Boon appeared at and participated in the hearing regarding the State's motion; clearly, there was no question as to its application to him. To the

extent that there was an error, Boon has failed to show how he was harmed by it. "Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction." *State v. Tulley*, 2001 WI App 236, ¶7, 248 Wis. 2d 505, 635 N.W.2d 807. We conclude that any error in the caption of the State's motion had no bearing on Boon's conviction, and reject his claim.

*Other Claims*

¶49 Boon raises other claims, such as challenging the timeframe set forth in the criminal complaint and perjury accusations regarding some of the police officers' testimony. Boon did not raise these claims in the trial court, and we will therefore not address them. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("[i]t is a fundamental principle of appellate review that issues must be preserved at the [trial] court," and issues that are not preserved "generally will not be considered on appeal"). As for any other issues or sub-issues raised by Boon that we have not addressed, we reject them because they were unpersuasive, undeveloped, or inadequately briefed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶50 Therefore, as we have rejected all of Boon's claims on appeal, we affirm his judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.